COMMONWEALTH *vs.* ANDREW J. MILLYAN
(and a companion case[1]).

Suffolk.   November 4, 1986. — February 10, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Assistance of counsel. *Homicide. Evidence,* State of
mind, Prior conviction. *Practice, Criminal,* Impeachment by prior con-
viction, Instructions to jury, Verdict, Judicial discretion, Assistance of
counsel. *Intent. Joint Enterprise.*

At the hearing on a criminal defendant's motion for a new trial based on
ineffectiveness of his trial counsel, the judge was warranted in concluding
that counsel reasonably decided to base the defense on the theory that
the defendant's conduct in shooting the victim in a bar was wanton and
reckless, a contention which, if accepted, would have resulted in a
verdict of involuntary manslaughter, and that counsel reasonably rejected
an alternative course of producing evidence of the defendant's intoxica-
tion in an effort to prevent the jury from finding deliberate premeditation.
[176-180]
In a proceeding seeking postconviction relief the judge was warranted in
concluding that the testimony of a certain independent ballistics expert
whom the defendant's trial counsel had contemplated hiring would not
have materially enhanced the defense and that, consequently, the decision
not to present this testimony did not render counsel's performance inef-
fective in a constitutional sense. [180-181]
Where, throughout a murder trial, defense counsel had based his case on
the contention that, although the defendant had fired a weapon intention-
ally, he had done so in a reckless manner and not with deliberation,
counsel's reference to the shooting as an "accident" in the context of
his closing argument gave no support to the defendant's contention on
appeal that his counsel had abandoned an accident defense that was
otherwise available to him. [181-182]
At a murder trial the evidence did not require that the jury be instructed as
to the defense of accident. [182]
Although at a murder trial arising from a shooting in a bar, the judge
improperly struck testimony of the defendant tending to explain his fear
of an individual who approached him in the bar shortly before the shooting,

[1] Commonwealth *vs.* Arthur A. Corbett.

no prejudice occurred, as the defendant was later permitted to give the same testimony without objection. [182-183]

At a murder trial arising from a shooting in a bar, there was no constitutional or other error in the judge's striking the defendant's answer to his counsel's question why a certain individual approached him in the bar shortly before the shooting. [183]

At a criminal trial, there was no error in admitting in evidence, as part of a defendant's "record" for impeachment purposes pursuant to G. L. c. 233, § 21, the charge which led to a certain prior criminal conviction, even though the ultimate conviction was for a lesser offense. [183-185]

A record of a defendant's prior criminal conviction, admitted in evidence at a criminal trial for impeachment purposes, could not reasonably have been viewed by the jury as being for a serious offense where only a fine was imposed, and, consequently, this court did not consider whether it should have been excluded on the ground of similarity to the offense for which the defendant was on trial. [185]

At a murder trial the judge's instructions to the jury on the theory of joint venture adequately explained that, in order for a joint venturer to be found guilty of the same crime as the principal, he must share the principal's intent. [185-186]

A jury could properly find a defendant guilty of murder on the theory of joint venture, where they would have been warranted in finding that the joint venturer, knowing that the principal defendant was armed with a shotgun and seeking revenge for an attack on his friend the preceding night, drove the principal to a bar near which the attack had occurred and made no attempt to disasociate himself from any of the principal's acts up to and including the time of his shooting the murder victim, and where the jury could properly infer that the joint venturer thereafter assisted the principal in his escape and in disposing of the weapon. [186-188]

Rule 25(b) (2) of the Massachusetts Rules of Criminal Procedure empowers a judge to reduce the verdict in a criminal case whenever he believes a lesser verdict is more consonant with the interests of justice. [189]

No abuse of discretion or other error of law appeared in a judge's action setting aside two verdicts of murder in the first degree and ordering the entry of findings of guilty of murder in the second degree. [189-190]

INDICTMENTS found and returned in the Superior Court Department on January 19, 1982.

The cases were tried before *Roger J. Donahue,* J., and posttrial motions were heard by him.

*William C. Madden* for Andrew J. Millyan.

*Judy G. Zeprun,* Assistant District Attorney (*Timothy M. Burke* with her) for the Commonwealth.

*Robert A. Sherman* (*Mary Winstanley O'Connor* with him) for Arthur A. Corbett.

NOLAN, J. Three appeals arise out of the same crime and raise common issues of law.[2] On September 21, 1981, the defendant, Andrew J. Millyan, carrying a loaded shotgun, entered the Sandbar Lounge in Revere Beach. He was accompanied by a codefendant, Robert L. Cobb; the other codefendant, Arthur A. Corbett, waited in a car parked in an alley next to the lounge. Within a few minutes, Millyan fired the shotgun. The pellets from the blast struck Dana Hill, a customer playing pool in the rear of the bar, about the face and skull. Hill died three days later. The defendants were indicted and tried on the charge of murder in the first degree on the theory of joint enterprise. On May 19, 1982, the jury found Corbett and Millyan guilty of murder in the first degree; Cobb was convicted of murder in the second degree. *Commonwealth* v. *Cobb, post* 191 (1987).

Both Millyan and Corbett filed posttrial motions, requesting the trial judge to order a new trial or to set aside the verdict as against the weight of the evidence. Millyan's motions were denied while Corbett's motions were waived until after notice of appeal was filed. The judge then sentenced both men to life imprisonment. Millyan and Corbett thereafter retained new counsel. After entry of the case in this court, pursuant to G. L. c. 278, § 33E (1984 ed.), Millyan's new attorney filed a motion for a new trial. On March 27, 1984, this court ordered that the motion be remitted to the trial judge for consideration. The judge conducted an extensive inquiry. He denied the motion for a new trial, but ordered the verdict of guilt reduced to murder in the second degree. Subsequently, the judge also reduced Corbett's verdict to murder in the second degree. The Commonwealth appeals the reduction in the verdicts. The defendants request that this court order a new trial or further reduce their verdicts to manslaughter. We decline to take any of these steps.

---

[2] See *Commonwealth* v. *Cobb, post* 191 (1987).

We summarize the facts as presented by the Commonwealth. The murder in the bar was precipitated by an attack on one James Rich, a friend of Millyan. On September 20, 1981, the day before the murder, at approximately 2 A.M., Rich left the Sandbar Lounge. On the street he was accosted by a man whom he did not recognize. The man accused Rich of being a member of the Devil's Disciples, a motorcycle gang. A fight ensued in which the man was joined by three others. Rich was knocked and pinned to the ground and was stabbed repeatedly in the legs. During the course of the attack, one of the assailants told Rich that "[Y]our buddy Andy [Millyan] is next." The attackers fled, leaving Rich bleeding on the sidewalk. Rich was taken to a hospital where he remained for about nine days.

Around 11 A.M., Rich telephoned Millyan at his home. He described what had happened to him and told Millyan of the assailant's threat. Rich also suggested that Millyan obtain Rich's shotgun for protection. That evening, Millyan, Corbett, and another man, James Vassill, visited Rich in the hospital. Rich conversed principally with Millyan, whom he had known for about fourteen years. The two men discussed the attack on Rich, which caused Millyan and Corbett to become very disturbed. Rich urged Millyan and the others not to take any retaliatory action.

After leaving the hospital, Millyan and Corbett went to Cobb's home. They informed Cobb of the attack on Rich, which caused him to become quite upset. Millyan and Corbett left to go to Millyan's house. That evening Millyan and Corbett, who was driving,[3] drove by the Sandbar Lounge; Millyan asked Corbett to stop. Millyan jumped from the car, a convertible, without opening the door and grabbed a tire iron from the back seat. He appeared really "mad" and "mean looking." Corbett remained in the car. Millyan was holding a tire iron in each hand and was "ranting and raving." Millyan was "screaming" that his friend had been stabbed and he intended "to get someone for it." Millyan eventually calmed down and was persuaded

---

[3] The car was Millyan's. His license had been suspended for driving while intoxicated.

to leave before any trouble developed. Millyan and Corbett then drove away.

Around 3 P.M. the next day, September 21, 1981, Millyan, Cobb, Corbett, and an unidentified woman drove to a friend's house where Millyan obtained Rich's shotgun. The shotgun was not loaded; Millyan checked the gun to make sure that it was clean and then loaded it with five rounds, keeping one in his pocket. Millyan placed the gun under the front seat of the car.

Later in the afternoon, they stopped at the home of Cobb's sister and spent about one hour there. Around 6:30 P.M., they rode past the Sandbar Lounge and Millyan told Corbett to park the car. Corbett drove into an alley alongside the bar. Millyan grabbed the shotgun case from underneath the seat, unzippered it, and took the gun with him into the bar. Cobb went with Millyan; Corbett stayed in the car.

Only ten or twelve people were inside the bar. The Sandbar Lounge was not large. As Millyan and Cobb entered, a horse-shoe-shaped bar was to their right. In the rear the victim, Dana Hill, was playing pool with a friend. The poolroom was separated from the barroom by a partition which contained three cutouts. These cutouts, shaped like windows, were used for passing drinks to the customers in the poolroom. The bottom of each cutout was almost two and one-half feet from the floor.

After entering the bar, Millyan and Cobb stopped a few feet from the door. Millyan "pumped" the shotgun and this action chambered a round in preparation for firing. Millyan shouted that he had gotten a message from a friend that had been stabbed here by some Hell's Angels and if he saw any Hell's Angels in the bar, he was going "to blow them away." Alan Nicosia was seated on the other side of the bar running parallel to the partition. Nicosia got up and walked toward the end of the bar. He attempted to persuade Millyan to put down the gun, but Millyan only became more agitated.

Meanwhile, Hill was standing at one end of the pool table, directly behind one of the partition cutouts. This placed Hill in a direct line with Millyan. Hill had long hair and a beard. He was not a member of any motorcycle gang; he was waiting for his girl friend who was a barmaid.

After making his threat, Millyan pointed the shotgun toward the rear of the bar. The gun was held at shoulder level. He then pulled the trigger, firing a shell that contained almost 300 pellets. At least fifty of these pellets struck Hill about the head. Hill fell to the floor screaming for help while the rest of the customers scattered for protection.

Millyan then pumped another round into the chamber. At this point, Cobb grabbed Millyan's arm and said, "Come on, let's go." They ran into the alley where Corbett and the woman were waiting in the car. Apparently the woman, upon hearing the shot, fled from the car. Millyan sat down on the trunk with his feet on the back seat, holding the shotgun. The car then sped away. While fleeing, the defendants drove over a bridge and Millyan threw the shotgun into the water. Shortly afterward, police, who had been notified of the shooting, stopped the car, and arrested the three men.

### Claims of Defendant Millyan

We shall treat Millyan's claims of error and then Corbett's. Millyan maintains that his trial was infected by four errors: (1) trial counsel's performance was constitutionally deficient; (2) the judge failed to instruct the jury on the defense of accident; (3) the judge erroneously excluded testimony which was vital to Millyan's defense; and (4) the judge improperly allowed Millyan to be impeached by the introduction of criminal charges brought against him. We conclude that Millyan cannot prevail on any of these claims.

1. *Ineffective assistance of counsel.* The cornerstone of Millyan's appeal is that his trial counsel's performance constituted ineffective assistance of counsel, resulting in a violation of his State and Federal constitutional rights. Millyan contends that trial counsel failed to present evidence of Millyan's history of alcohol and drug abuse and his intoxication at the time of the homicide, failed to present the testimony of an independent ballistics expert who would have contradicted the findings of the Commonwealth's ballistician, and abandoned the defense of accident in his closing argument.

The standard of review we apply in assessing claims of ineffective assistance of counsel is well-established.[4] We must determine "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

At the time of trial, Millyan's lawyer possessed considerable evidence that his client had a long history of alcohol and drug abuse. During the hearings on the motion for a new trial, appellate counsel introduced these documents in evidence.[5] He also elicited testimony about Millyan's troubled past[6] and, in particular, that Millyan had been drinking heavily during the weekend before the shooting. After examining these materials and evaluating the testimony, the motion judge, who was also the trial judge, concluded that trial counsel exercised "good judgment" in keeping this information from the jury. We are equally satisfied that Millyan has not demonstrated that counsel's decision here was "manifestly unreasonable." *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

As the judge below noted, the documents contained information that was rather damaging to Millyan's defense. For example, according to Millyan's last counselor before the shooting, Eugene Orezack, Millyan had demonstrated sufficient progress as of August, 1981, in recovering from his alcohol abuse that he recommended that Millyan be allowed to follow the treatment plan on his own recognizance. Consequently, Millyan's

---

[4] We have concluded that if the State standards are met, the Federal standards have likewise been met. *Commonwealth* v. *Lattimore,* 396 Mass. 446, 451 n.9 (1985).

[5] The documents included clinical reports, probation reports, Millyan's criminal record, and letters from Millyan's alcohol and drug counselors. Millyan's criminal record dated from the time he was fourteen. It contained ninety-seven entries, the overwhelming number of which were alcohol or drug related.

[6] Millyan, Millyan's father, and James Vassill testified.

probation officer discharged him on August 20, 1981.[7] The counselor also was impressed by Millyan's loyalty and devotion to his friends; Orezack observed that "[t]here was nothing [Millyan] would not do for a friend." Millyan's probation officer's report indicated that Millyan had a confrontation with the Hell's Angels on an earlier occasion. Sometime in 1980, a member of the Hell's Angels pushed Millyan's girl friend and Millyan had retaliated in some fashion. Also, the probation officer had heard that Millyan was involved with a motorcycle gang, although Millyan denied that to the officer. We agree with the motion judge that such information lent credence to the Commonwealth's theory that Millyan went to the bar with a loaded shotgun "for the sole purpose of seeking revenge on any Hell's Angels present, who had recently assaulted a close friend of the defendant, and also who had had long-standing animosity towards the defendant, himself."

The defendant further contends that trial counsel failed to present to the jury substantial evidence that Millyan was intoxicated at the time he pulled the trigger and in this connection failed to request an instruction pursuant to *Commonwealth* v. *Gould,* 380 Mass. 672 (1980).[8] This evidence, the defendant claims, combined with Millyan's history of alcohol and drug abuse, proves that Millyan was incapable of deliberate premeditation.[9] At the hearing on the motion for a new trial, however, the defendant failed to produce any evidence of his intoxication other than that which was presented to the jury.

Of the three defendants, only Millyan testified. He testified that he had drunk heavily throughout the weekend before and

---

[7] The probation resulted from a conviction of driving while intoxicated.

[8] In the *Gould* case, we held that, when the evidence fairly raises an issue of the defendant's capacity to commit murder in the first degree either by reason of premeditation or extreme atrocity or cruelty, the defendant may have appropriate instructions. *Id.* at 682, 686 n.16.

[9] A defendant accused of deliberately premeditated murder may negate deliberate premeditation by showing that he was intoxicated by alcohol or drugs at the time of the crime. *Commonwealth* v. *Costa,* 360 Mass. 177, 186 (1971). *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617-618 (1949). *Commonwealth* v. *Taylor,* 263 Mass. 356, 362-363 (1928).

on the day of the murder. According to Millyan, both he and Cobb were drunk when they entered the bar that evening. However, Cobb's sister testified to the contrary. On the day of the murder, she came home from work around 4:15 P.M. to find her brother and Millyan in her kitchen. She testified that both men had been drinking. In her opinion, her brother, who also had a history of alcoholism, was drunk; this was not the case with regard to Millyan. The defendants, including Corbett, who had remained outside in the car, left around 5:30 P.M., one hour before the shooting.

Thus, the only evidence to which both trial counsel and appellate counsel can point that Millyan was intoxicated at the time of the shooting is Millyan's own testimony. This was a rather weak reed upon which to rest a defense given the strong case presented by the Commonwealth. Counsel, therefore, made a strategic decision to pursue a defense that Millyan's conduct was wanton and reckless based on the account Millyan provided to him of the crime.

Millyan testified that, after entering the bar, he announced that he wanted some information about the stabbing incident of the previous day. At that point, Nicosia, accompanied by two other men, began to walk directly toward Millyan. Millyan claimed that he became nervous because he thought one man had a knife and another was holding a beer bottle in a threatening way. When the three men came to within about fifteen feet of him, Millyan fired what he called "a warning shot" in the direction of the ceiling in the rear left corner of the bar. Millyan conceded that he had pumped the shotgun again, but denied that he was aiming at Hill or anyone else. He said that he was unaware that Hill had been struck by the pellets from the blast.

If this version of events had been accepted by the jury, Millyan would have been convicted of involuntary manslaughter. Counsel could not very well have argued simultaneously that Millyan was intoxicated, because it is simply not credible that Millyan could present a detailed account of the events surrounding the shooting while also claiming that his mind was so addled by alcohol that he was incapable of deliberate

premeditation. We agree with the motion judge that this was an eminently reasonable decision by trial counsel. See, e.g., *Commonwealth* v. *Doucette,* 391 Mass. 443, 458 (1984) (counsel's trial tactic not to press claim of intoxication was reasonable because it would have undermined defendant's claim of self-defense); *Commonwealth* v. *Genius,* 387 Mass. 695, 697 (1982) (counsel made reasonable tactical choice to argue only diminished capacity and not to assert lack of criminal responsibility); *Keys* v. *Duckworth,* 761 F.2d 390, 393-394 (7th Cir. 1985) (counsel's failure to investigate intoxication defense did not constitute ineffective assistance of counsel because facts showed no evidence of intoxication, thus negating any possibility of demonstrating that defendant lacked the requisite specific intent). "When the arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty,'" *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979), quoting *Commonwealth* v. *Stone,* 366 Mass. 506, 517 (1974). For the same reasons, we perceive no substantial risk of a miscarriage of justice in trial counsel's failure to request a *Gould* instruction.

Ronald R. Scott of the State police testified for the Commonwealth as a ballistics expert. He had examined the wood around a window in the back wall of the poolroom within one hour of the shooting. The wood contained a number of embedded pellets. Scott concluded that the trajectory of the pellets was consistent with a shot fired at a "somewhat level or upward angle." In addition, one witness testified that Millyan had pointed the gun straight ahead and not at the ceiling as he had claimed.

Millyan's father testified at the hearing on the motion for a new trial that trial counsel had been considering hiring a ballistics expert. Shortly thereafter, trial counsel told the father that an expert was unnecessary because the Commonwealth would supply one and "[w]e can rely on the State."

The expert whom trial counsel had contemplated hiring was Carl M. Majesky, who testified at the motion hearing. Majesky, while qualified as a firearms identification expert, admitted he

was not qualified as a ballistician. Majesky was not able to view the scene of the homicide, but he did study the testimony of Trooper Scott and Millyan, a diagram of the scene, and a photograph of the victim. He concluded that the vertical spread of the pellets on the back wall was "indicative of an upward type of shot." But Majesky conceded under cross-examination that an upward angle could range anywhere from one degree to ninety degrees and that even if the shotgun was fired at an upward angle, it could still have been aimed at the victim's face. Most damaging of all, however, was that Majesky agreed with Trooper Scott's opinion that, if three men were coming directly toward Millyan, as Millyan had testified, it would have been impossible for Millyan not to have hit any of the men with pellets from the shotgun round.

The motion judge concluded that Majesky's testimony did not materially enhance Millyan's defense. Indeed, as to Millyan's contention that he fired into the corner of the ceiling, Majesky's testimony strongly supported Scott's opinion that the line of fire was direct and there was only a minute difference as to the degree of the upward angle at which the shotgun was aimed. Therefore, Majesky's testimony at trial "would not have been persuasive." We accept the judge's subsidiary findings as final if warranted by the evidence and we pay substantial deference to his ultimate conclusions. *Commonwealth* v. *Shine,* 398 Mass. 641, 651 (1986). The decision by trial counsel not to use Majesky did not deprive Millyan of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The defendant's final attack on trial counsel's performance is directed at counsel's "abandonment" of the defense of accident in his closing argument. The defendant does not support this position with any reasoning. He merely juxtaposes two phrases from counsel's summation and concludes that this constitutes abandonment of a defense because the statements are inconsistent.

When read in the context of counsel's entire closing argument, the statements are easily reconcilable. On the one hand, counsel stated: "One word sums up my case—accident." On the other, he argued that the Commonwealth had

not established that Millyan's act was the result of deliberation. Rather, it should be viewed as "a product of fear," "a product of frailty of human nature," or as "a reckless act."

There is no discrepancy between the reference to the shooting as an "accident" and the claim that it was a reckless act. It is true that we have recognized that there is a defense of accident, similar to that of self-defense. See *Commonwealth* v. *Hutchinson,* 395 Mass. 568, 578 (1985). Where the issue is properly raised, the Commonwealth has the burden of proving that a shooting was not accidental. *Id.* Where there has been a shooting, this defense is available only where there is evidence of an unintentional or accidental discharge of a firearm. See, e.g., *Commonwealth* v. *Zezima,* 387 Mass. 748, 756 (1982); *Commonwealth* v. *Zaccagnini,* 383 Mass. 615, 616 (1981); *Commonwealth* v. *Barton,* 367 Mass. 515, 517-518 (1975). When trial counsel characterized what happened in the bar as an "accident," he was not using the term as a defense, but he meant that Hill's death was an accidental by-product of Millyan's intentional discharge of the shotgun. Throughout the trial, counsel maintained that Millyan intentionally fired the gun in a reckless manner. The claim that he abandoned the accident defense is thus without merit.

2. *Failure of the judge to instruct on accident.* For the reasons set forth above, the defense of accident was not an issue in the trial and no instruction was required.

3. *Excluded testimony.* Millyan testified that, on the night of the shooting, as he and the others drove past the bar, he saw Nicosia, "who Jimmy told me over the phone was there that night." On the prosecutor's objection and motion to strike, the judge struck those words from the record. Later, counsel asked Millyan why he thought Nicosia approached him in the bar, and Millyan replied, "Well, he had something to do with the Hell's Angels motorcycle club, I know that." Again, on the prosecutor's objection and motion to strike, Millyan's answer was struck. Defense counsel did not object to either of these rulings.

While the prosecutor did not state the ground of his objection to the admission of the first response, the Commonwealth

maintains that it was inadmissible as hearsay. The defendant argues that the statement was not hearsay. We agree that that statement was improperly excluded, but without prejudice, because the defendant on redirect examination was permitted to testify without objection that he was afraid of Nicosia "because he was there the night before that Jimmy got stabbed and my life was threatened, I figured if they seen me with that gun that they'd know I had something down my house and they wouldn't bother me."

As to Millyan's answer to why Nicosia approached him, the Commonwealth argues that it was mere opinion or speculation, since it was impossible for Millyan to know what motivated Nicosia. The general rule is that a witness may testify only to facts that he observed and may not give an opinion on those facts. *Barrie* v. *Quinby,* 206 Mass. 259, 265 (1910). See *Commonwealth* v. *Lewis,* 286 Mass. 256, 257 (1934) (defendant not permitted to testify that a person "knew him" because defendant did not show that he had knowledge of that person's state of mind). The judge's ruling was proper. The defendant's reliance on *Commonwealth* v. *Caldron,* 383 Mass. 86 (1981), is misplaced. There, we held that "[t]he exclusion of testimony by the defendant describing his own intent [is] error." *Id.* at 89. Millyan was permitted to testify that he was scared by the approach of Nicosia and the other men, that he did not intend to shoot at Hill, and that he was only firing a warning shot. The jury had ample evidence of Millyan's state of mind and his intent at the time of the murder.

The defendant, however, further claims that the exclusion of either or both of these answers was constitutional error because the effect was to deny him his due process right to present his own version of the facts. The only support offered for this proposition is *Washington* v. *Texas,* 388 U.S. 14 (1967), where the Supreme Court invalidated a State statute which prevented a defendant from calling his accomplice as a witness. Even assuming that *Washington* is somehow applicable to the instant case, there was no constitutional error.

4. *The prosecutor's use of Millyan's prior criminal convictions for impeachment purposes.* Millyan's final claim of error

arises from the phrasing of certain questions posed by the prosecutor as he sought to undermine Millyan's credibility by impeaching him with prior criminal convictions. The prosecutor impeached Millyan with thirteen convictions. In four questions, the prosecutor referred to both the crime charged and the conviction; in one question, there was a difference between them.[10] Millyan contends that the form of the question and the reference it contained to a similar violent crime were highly prejudicial. Because trial counsel did not make a seasonable objection, we must determine whether the information learned by the jury creates a substantial risk of miscarriage of justice.[11]

As to the form of the prosecutor's questions, there was no error. Although the better practice would avoid mention of the crimes for which a defendant was arrested or indicted, the

---

[10] The prosecutor asked Millyan: "And are you the same Andrew J. Millyan who on the 9th day of August, the year of 1980, having been charged with the crime of assault and battery with a dangerous weapon upon one Peter Nuell, by means of a dangerous weapon, to wit, a two by four board with nails, and you were represented by an attorney Modeca, and that complaint was later amended to civil [sic] assault and battery for which you were found guilty and . . . one hundred twenty-five is your fine, and placed on probation until January 21, 1982?"

[11] This was the second conviction introduced by the prosecutor. At this point, Millyan's trial attorney objected in the form of a motion in limine to the conviction already referred to and to any other conviction that might be introduced for the reason that the crimes were old and had no relationship to the crime charged. The judge ruled that he would permit the prosecutor to impeach Millyan pursuant to G. L. c. 233, § 21, and informed the jury that the convictions were only admissible for impeachment purposes.

The Commonwealth also maintains that it is questionable whether any appellate review is available since the admission of criminal convictions is a matter of discretion for the trial judge. *Commonwealth* v. *Chase*, 372 Mass. 736, 750 (1977). At the time of trial, appellate review was not available, absent constitutional error. *Commonwealth* v. *Diaz*, 383 Mass. 73, 80-82 (1981). In *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984), we announced a rule that we would evaluate admissions of prior convictions to determine whether the danger of unfair prejudice outweighed the probative value and constituted an abuse of discretion. The Commonwealth urges that the *Maguire* case not be applied retroactively. *Maguire*, however, does not apply unless objections are "seasonably raised" at trial. *Id*. at 470.

statutory language allows the use of the "record" of the defendant's convictions. G. L. c. 233, § 21 (1984 ed.). As long as the prosecutor reads from the defendant's "record," introduction of the charge which led to the conviction is permissible even though the ultimate conviction is for a lesser offense. *Commonwealth* v. *Connolly,* 356 Mass. 617, 626-627, cert. denied, 400 U.S. 843 (1970).

The introduction of evidence of similar crimes presents "an extremely high potential for unfair prejudice." *Commonwealth* v. *Elliot,* 393 Mass. 824, 834 (1985), quoting *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 681 (1974) (Hennessey, J., concurring). We express no opinion, however, as to whether there was a sufficient similarity between the crime of assault and battery with a dangerous weapon and the murder charge here to warrant exclusion. Millyan was fined and not imprisoned for this offense. "Because the crime of which the defendant had been convicted resulted in a fine . . . the jury could not reasonably have believed it was a serious offense." *Commonwealth* v. *Maguire,* 392 Mass. 466, 471 (1984). Furthermore, the prosecutor did not misuse the evidence of prior convictions in his closing argument and the judge gave the jury the appropriate limiting instruction. There was no substantial risk of a miscarriage of justice.

### *Claims of Defendant Corbett.*

The defendant Corbett raises two issues on appeal. He challenges the judge's instructions to the jury on the theory of joint venture and argues that the evidence introduced at trial was insufficient to prove that he shared the mental state of the principal, Millyan. These arguments are without foundation.

1. *Jury instructions.* In a joint venture case, the Commonwealth must prove beyond a reasonable doubt that "the accomplice . . . intentionally assist[ed] the principal in the commission of the crime [and] the accomplice . . . share[d] with the principal 'the mental state required for that crime.'" *Commonwealth* v. *Scanlon,* 373 Mass. 11, 17 (1977), quoting *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). The gravamen of Corbett's dissatisfaction with the jury instructions is that the judge did not sufficiently emphasize the requirement

that, in order for a joint venturer to be found guilty of the same crime as the principal, he must share the principal's intent. The defendant points out that, in preliminary instructions the judge gave to the jury at the outset of the trial, the judge did not refer to the shared intent rule. Corbett also finds fault with the judge's final charge to the jury because it was prefaced by a lengthy instruction on the element of intentional assistance.

Corbett's trial counsel, who is not appellate counsel, did not object to the judge's preliminary instructions or to the final instruction on joint venture. In fact, counsel expressed his satisfaction when he told the judge that he had "covered the bases." Accordingly, our review is limited to a determination whether the charge as a whole was so erroneous that it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Drew,* 397 Mass. 65, 81 (1986).

The preliminary instruction to which the defendant refers informed the jury that an accomplice must know that the act is criminal and commit some act in furtherance of the criminal enterprise. This was not the most accurate statement of the law, but it hardly created any serious prejudice to Corbett. The judge made it clear to the jury that his instruction was intended to be brief and incomplete and explained that he would provide a more detailed statement at the close of the case.

The judge's final charge on joint venture occupies ten pages in the trial record. Roughly half of these were devoted to explaining the nature of joint enterprise to the jury; the remainder elaborated on the two requirements of active participation and shared intent. The judge referred to the requirement of shared intent at least seven times. He quoted verbatim from *Commonwealth* v. *Richards, supra.* The charge on joint enterprise was "careful and accurate and fully covered all matters which on the evidence were appropriate for the consideration of the jury." *Commonwealth* v. *Lussier,* 333 Mass. 83, 93 (1955).

2. *Alleged insufficiency of the evidence as to intent.* At the close of the evidence, Corbett's trial counsel moved for a required finding of not guilty which was summarily denied. Corbett claims that the judge erred because the evidence is

insufficient to show deliberation and premeditation on Corbett's part. At best, appellate counsel argues, Corbett was merely a chauffeur for Millyan. We conclude that the motion was properly denied.

We have examined the evidence in a light most favorable to the Commonwealth and are satisfied that a rational trier of fact could have found each element of the crime present beyond a reasonable doubt. *Commonwealth* v. *Amado,* 387 Mass. 179, 186 (1982), and cases cited. The Commonwealth's case-in-chief presented a compelling array of evidence from which the jury could infer Corbett's intent. Corbett was aware of the attack on Rich as well as Millyan's determination to seek revenge. Nevertheless, he drove Millyan to the Sandbar Lounge twice. There can be no doubt that, on the second occasion, Corbett was aware that Millyan was armed with the shotgun since Corbett had driven Millyan to the house where he acquired the gun. Corbett sat in the car while Millyan took the loaded shotgun from under the front seat and entered the bar. He made no attempt to disassociate himself from any of Millyan's acts up to and including the time of the shooting. After the shot was fired, the jury could infer that Corbett assisted Millyan in his escape and in the disposal of the weapon. An individual who renders aid "is an abettor even if he does not participate in the actual perpetration of the crime, '[f]or the presence of the abettor under such circumstances, must encourage and embolden the perpetrator to do the deed, by giving him hopes of immediate assistance.' " *Commonwealth* v. *Soares,* 377 Mass. 461, 471-472, cert. denied, 444 U.S. 881 (1979), quoting *Commonwealth* v. *Knapp,* 9 Pick. 495, 518 (1830). This evidence was sufficient to withstand the defendant's motion.'

Nor did the Commonwealth's position deteriorate after the close of all the evidence. *Commonwealth* v. *Sheline,* 391 Mass. 279, 283 (1984). Millyan's testimony was the only evidence offered to show that none of the three defendants acted with deliberation and premeditation. The only reference to Corbett's state of mind introduced through Millyan was that, after pulling into the alley next to the bar, Corbett turned off the car, put on the radio, and sat back in a relaxed fashion. After Millyan

took the shotgun from under the seat, and left the car, Corbett asked Millyan what he was doing. Millyan told Corbett not to worry because no one was going to get hurt. "The jurors could accept or reject [Millyan's] testimony in its entirety, or they could pick and choose which 'portions of the defendant's [testimony] as they may consider trustworthy.'" *Commonwealth* v. *Reid,* 384 Mass. 247, 257 (1981), quoting *Commonwealth* v. *Amazeen,* 375 Mass. 73, 80 n.5 (1978). The jury were not bound to believe that Corbett was a mere chauffeur. See *Commonwealth* v. *Britt,* 358 Mass. 767, 770 (1971) (jury not bound to believe defendant was a mere bystander). There was no error in the denial of Corbett's motion.

*Appeals of Commonwealth and the Defendants as to the Reduction of Verdicts*

The final issue for our determination concerns the order of the motion judge reducing the convictions of Corbett and Millyan to murder in the second degree. Both defendants request that we provide further relief by reducing their convictions to manslaughter. The Commonwealth disputes the claim that justice warrants manslaughter verdicts; indeed, the Commonwealth urges that the original verdicts be reinstated.

In assessing a trial judge's decision to reduce a verdict under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), "we consider only whether the judge abused his discretion or committed an error of law." *Commonwealth* v. *Gaulden,* 383 Mass. 543, 557 (1981). The judge should not second-guess the jury and we do not substitute our judgment for that of the judge. *Id.* at 555-557.

The judge heard Millyan's motion for a new trial three years later. The judge denied the motion for a new trial, but, despite his conclusion that a *Gould* defense was inconsistent with Millyan's "warning shot" version, he found that "if the *Gould* instruction had been requested by this defendant, in all probability I would have given it, more out of caution than necessity. . . . My review of the evidence is that there is some question in my own mind whether, at the time and just prior to the shooting, the defendant had sufficient judgment and mental responsibility required for deliberate premeditation." Thus, the

judge apparently believed that the evidence at trial justified a *Gould* instruction on the ground that Millyan may have been intoxicated at the time of the shooting.

The Commonwealth argues that the judge committed an error of law in reducing Millyan's verdict. The prosecution's argument is that the standard applied by a trial judge in considering whether to reduce a verdict pursuant to rule 25 (b) (2) is the same as the test used on a motion for a required finding of not guilty. *Commonwealth* v. *Lattimore,* 396 Mass. 446 (1985). This is not the law. *Commonwealth* v. *Gaulden, supra* at 555-557, makes clear that rule 25 (b) (2) empowers the trial judge to act when he believes a lesser verdict is more consonant with the interest of justice. The "trial judge, acting under rule 25 (b) (2), should be guided by the same considerations that have guided this court in the exercise of its powers and duties under § 33E to reduce a verdict." *Id.* at 555.

The Commonwealth further contends that it was error because the evidence adduced at trial about the defendant's intoxication was not sufficient to warrant a charge as to diminished capacity. Apparently, the Commonwealth believes that such a charge may only be given by a judge when requested and when there is expert testimony on the defendant's diminished capacity. But as long as there is some evidence that the defendant lacked the capacity to commit deliberate and premeditated murder, he is entitled to such an instruction (see *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617-618 [1949]).

Nor do we believe that there is any basis for the claim that the judge abused his discretion. "A trial judge's familiarity with a case may lead him or her to conclude, particularly in light of postverdict developments, that justice may not have been done at a defendant's trial." *Commonwealth* v. *Leaster,* 395 Mass. 96, 101 (1985). The judge seemed satisfied that Millyan was sufficiently intoxicated that he was unable to premeditate and deliberate and that the interests of justice mandated a reduction to murder in the second degree. The finding is "based on the judge's assessment of the witnesses' credibility," *Commonwealth* v. *Doucette,* 391 Mass. 443, 448 (1984), and will not be disturbed unless there is no support in the

record. See *Commonwealth* v. *Monteiro,* 396 Mass. 123, 131 (1985).

Intoxication does not operate to reduce murder in the first degree to manslaughter. Millyan's manslaughter theory was clearly rejected at trial by the jury. We do not sit as a second jury. Since we have upheld the judge's reduction of the verdict of the principal, Millyan, we shall do the same for Corbett. Similarly, Corbett's request that we further reduce his conviction to manslaughter is denied.

Accordingly, we affirm the judge's order denying the motions for a new trial and affirm his order setting aside the verdicts of murder in the first degree and ordering the entry of findings of guilty of murder in the second degree.

*So ordered.*