COMMONWEALTH vs. DONALD W. GHEE.

Suffolk. November 2, 1992. - February 16, 1993.

Present: LIACOS, C J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Constitutional Law*, Search and seizure, Admissions and confessions, Waiver of constitutional rights, Cruel and unusual punishment. *Search and Seizure*, Motor vehicle, Exigent circumstances. *Error*, Harmless. *Evidence*, Expert opinion. *Practice, Criminal*, Sentence, Verdict.

In a criminal case, the report of a tow truck operator to police that a human body was in the trunk of a certain motor vehicle provided exigent circumstances for the police to open the vehicle's trunk and take photographs of its contents without a warrant. [315-317]

At a criminal trial, error, if any, in the admission of certain statements made by the defendant after he received Miranda warnings, which he claimed were inadequate, was harmless beyond a reasonable doubt, where the contents of the statements could not have been a significant factor in his conviction, in light of the overwhelming evidence of guilt. [317-320]

At a murder trial, testimony with respect to the techniques employed by expert witnesses to identify a fingerprint and to match samples of plastic bags did not require a showing under the holding of *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), that the techniques had gained acceptance in their respective fields. [320]

There was no merit to a criminal defendant's contention that the imposition of consecutive sentences for his convictions of murder in the second degree and possession of a sawed-off shotgun violated his constitutional rights. [320-321]

The judge at a murder trial properly exercised his discretion in reducing the verdict of first degree murder to second degree murder where the evidence of premeditation was slim. [321-322]

INDICTMENTS found and returned in the Superior Court Department on July 26, 1989.

Pretrial motions to suppress evidence were heard by *Robert W. Banks*, J., and *Charles M. Grabau*, J., and the cases were tried before *Grabau*, J.

*James L. Sultan* (*Margaret H. Carter* with him) for the defendant.

*Roger L. Michel, Jr.*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. A jury convicted the defendant of murder in the first degree, unlawful possession of a sawed-off shotgun, and use of a shotgun while committing a felony. On the defendant's motion, the judge reduced the murder verdict to murder in the second degree, and sentenced the defendant to a mandatory term of life imprisonment. See Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979).[1] The defendant appeals from his convictions of murder in the second degree and unlawful possession of a sawed-off shotgun. The Commonwealth appeals from the order reducing the verdict. We affirm both the convictions and the order reducing the verdict.

On the Fourth of July, 1989, a Connecticut State trooper arrested the defendant on Interstate Route 95 for driving under the influence of alcohol. The trooper took the defendant, who was alone in the vehicle, to a State police barracks. A body was found in the trunk of the vehicle. The defendant challenges the denial of his motion to suppress based on a warrantless police search of the trunk.

Connecticut State police detectives questioned the defendant at a State police barracks after another State trooper had warned the defendant of his rights. The warning given had a defect that, in the circumstances, might have misled the defendant into talking to the police. The trial judge considered and denied the defendant's motion to suppress his statements to the Connecticut police.

The defendant also challenges the admission of expert testimony that tended to prove that he had shot the victim, his

---

[1] The judge sentenced the defendant to a consecutive term of from eighteen to twenty years on the conviction for unlawful possession of a sawed-off shotgun. The other conviction was placed on file. The defendant challenges the imposition of the "from-and-after" sentence.

girl friend, in their Boston apartment. The first expert connected the date and place of manufacture of a plastic bag in which the victim's body was found with that of two plastic bags found in the Boston apartment. The second expert's testimony was that the defendant's fingerprint appeared on a sawed-off shotgun found in the Boston apartment. Additional facts relevant to each issue will be presented in connection with the discussion of it.

1. Relying exclusively on art. 14 of the Massachusetts Declaration of Rights, the defendant argues that the warrantless search of the trunk of his motor vehicle by police officers in Connecticut violated his constitutional right to be free from an unreasonable search. The Commonwealth does not argue that we should not apply art. 14 principles to a Connecticut police search. We shall assume, without deciding, that the same art. 14 principles apply in deciding a motion to suppress evidence obtained in the Connecticut search as would apply if the search had been conducted in Massachusetts.[2]

There was evidence at the hearing on the motion to suppress that, shortly before seven o'clock in the morning of July 4, 1989, a Connecticut State trooper was on duty on Interstate Route 95 in East Lyme. He saw a motor vehicle partly on the median strip and the defendant apparently trying to restart it and push it off the median strip. The trooper approached the defendant. The trooper determined that the defendant, alone in the vehicle, was under the influence of alcohol and arrested him. The trooper then called for a tow truck, and Louis Morgillo, an employee of Niantic River Transmission Company, towed the vehicle to his employer's

---

[2]One obvious problem concerns the merits of applying an exclusionary rule designed to deter police misconduct when the search occurred in another State. Neither party has presented any argument as to whether the search was constitutionally proper under the Connecticut Constitution.

The defendant, by not arguing the point, implicitly acknowledges that the search did not violate the Fourth Amendment to the United States Constitution.

garage.[3] There Morgillo noticed an odor, apparently coming from the vehicle's trunk, that another State trooper had mentioned to him when they were near the vehicle on Route 95. Morgillo opened the trunk, thought that he saw a body, and immediately slammed the trunk shut. He called the police. An East Lyme police officer arrived, opened the trunk briefly, saw the body of a black female, closed the trunk, and then called the State police. Two State police officers arrived, looked in the trunk, and took Polaroid pictures of the body in the trunk. Thereafter a warrant was obtained to conduct a search of the vehicle.

The defendant moved to suppress evidence subsequently seized, including evidence obtained pursuant to search warrants. He also moved to suppress statements that he made following the warrantless search. These motions to suppress were based on asserted violations of his rights because of the warrantless search of the trunk. The motion judge ruled that the police had probable cause to search the vehicle and that exigent circumstances justified conducting that search without a warrant. The exigency, as the judge saw it, was that the defendant or someone on his behalf might at any time come to retrieve the vehicle. The judge denied the defendant's motions to suppress.[4]

The defendant makes no claim that Morgillo, the tow truck operator, was acting on direction of the police or was an agent of the State when he opened the vehicle's trunk. Therefore, Morgillo's brief search of the trunk presents no basis for an art. 14 challenge to the search of the trunk. The defendant's argument thus comes down to whether an unrea-

---

[3]There was no evidence that the Connecticut State police had any inventory procedure that applied to a seized motor vehicle.

[4]The judge also ruled that the discovery of the body was inevitable because, based on probable cause, a search warrant could have been obtained and the body would have been discovered. The inevitable discovery rule has no application in this case. In this State that rule does not apply where a search warrant should have been obtained but was not, even if it appears that inevitably a search warrant would have been issued if it had been sought. See *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117-119 (1989). Cf. *Commonwealth* v. *Benoit*, 382 Mass. 210, 215-219 (1981).

sonable search occurred when, having probable cause to believe that a human body was in the trunk of a motor vehicle to which they had lawful access, the police should have obtained a search warrant before opening the trunk and taking pictures of its contents. We think not. The circumstances were exigent because prompt investigation of the report of a dead body in the vehicle's trunk was warranted. This search did not involve the kind of police conduct that we would hope to deter by suppressing evidence found in the trunk, found as a result of subsequently issued search warrants, or obtained from the defendant in the course of police interviews.

2. The defendant argues that statements that he gave to Connecticut State police detectives should have been suppressed because he was not given proper warnings under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We reject his claim that the warnings that one State trooper gave at 7:23 A.M. on July 4, 1989, assuming they were adequate at that time, were not sufficient to advise the defendant of his rights when other officers began questioning him at 9 A.M., at which time he told the two detectives that he had already been advised of his rights. See *State* v. *Usry*, 205 Conn. 298, 307 (1987). The defendant does not argue that, solely because the interviewing officers did not advise him that they were investigating a murder, his rights were not adequately protected. See *Colorado* v. *Spring*, 479 U.S. 564, 577 (1987). Nor does the defendant seriously argue that, apart from the asserted Miranda violation, on the facts the motion judge found, he did not knowingly, intelligently, and voluntarily agree to talk to the Connecticut detectives. There is no basis for any claim that the Connecticut detectives tricked the defendant into talking to them about the body in his vehicle.

The problem concerning the Miranda warnings is that the rights given to the defendant, set forth on a form used for certain purposes in Connecticut, included the warning that "[y]ou are not obligated to say anything, *in regard to this offense you are charged with* but may remain silent" (emphasis supplied). In all other respects the warnings were adequate. The form, which the defendant signed, indicated that

the offenses charged were (a) driving under the influence and (b) operating a motor vehicle without a license. We are concerned here solely with the asserted failure to comply with the requirements of the United States Supreme Court concerning Miranda warnings and the consequences of a failure to give an adequate warning.[5]

No prescribed set of words must be used to provide the warnings required by the *Miranda* case. See *Duckworth* v. *Eagan*, 492 U.S. 195, 202-203 (1989) (inquiry is whether warnings reasonably convey rights to a person); *California* v. *Prysock*, 453 U.S. 355, 359 (1981) (no "talismanic incantation" required). Here, the warning arguably implied that, although he did not have to talk about offenses with which he was charged, the defendant did have to talk about offenses with which he was not charged. If the defendant reasonably could have concluded that the warning had that implication, he may have spoken about certain subjects believing that he was compelled to do so.[6] There was evidence, but no finding by the judge, that the defendant said that he was aware that he did not have to speak with the detectives.

Because there are no findings bearing on whether the warnings given reasonably conveyed his rights to the defendant, we are not willing to conclude that the Commonwealth met its burden of showing that the defendant received adequate warnings. We are, however, persuaded that any error was harmless beyond a reasonable doubt. A harmless error

---

[5]We need not consider any State law question. The defendant makes no meaningful argument under the Constitution of the Commonwealth. This court has not adopted Miranda or some similar warnings as a means of protecting State constitutional rights, but has established certain State law principles as adjuncts to the Miranda rule. See *Commonwealth* v. *Snyder*, 413 Mass. 521, 531 (1992).

[6]In his memorandum of decision, the motion judge recited warnings that were given without including the suspect portion with which we are concerned. The special quality of this suspect portion of the warnings was made apparent by defense counsel's questioning of the police witness who gave the warnings and by counsel's oral argument to the judge. The defendant's motion to suppress his statements and its accompanying affidavit do not rely on any misleading quality of the warnings given.

analysis is appropriate as to the admission in evidence of statements obtained in violation of the Miranda rule. See *Commonwealth* v. *Perez*, 411 Mass. 249, 259-260 n.7 (1991); *United States* v. *Batista-Polanco*, 927 F.2d 14, 21 (1st Cir. 1991).

The defendant's statement to the Connecticut detectives could not have been a significant factor in his conviction. He argues that his statement that no one else was allowed to use his car and that he had only one set of keys undercut his defense that the victim's husband had killed her and placed her body in the defendant's car. He also claims that the Commonwealth was able to rely on certain allegedly false exculpatory statements he made to the Connecticut detectives to the effect that he lived in Florida, had no permanent Boston address, and had not lived with, nor seen, the victim for a long time. There is no doubt that the allegedly false statements could be recognized as evidence of consciousness of guilt, and the Commonwealth so argued. In other circumstances, such an error in Miranda warnings might well not be harmless beyond a reasonable doubt.

There was in this case, however, such overwhelming evidence of guilt, independent of the content of the defendant's statements to the police, that any error was harmless beyond a reasonable doubt. The victim's body was found in the trunk of the defendant's motor vehicle in which he was traveling alone. The body was decomposing, and the defendant's clothing smelled strongly of putrefaction. Human blood was found on his clothing and on gloves in his vehicle. There was bloody clothing of the victim in the apartment the defendant and the victim had shared. A sawed-off 16-gauge shotgun with the defendant's fingerprint on it was found in the apartment next to a blood-stained bed. A spent 16-gauge shotgun shell that normally contains twelve pellets, the number of pellets found in the victim's body, was found on a mantel in the apartment. The plastic bag in which the victim's body was found came from the same day's production run of bags as two similar plastic bags found in the defendant's apartment. Additionally, there was evidence that, three weeks before her

murder, the victim had suffered a vicious beating. The defendant testified as to the incident that he had accidentally hit the victim with a baseball bat.

3. The judge properly admitted the testimony of two expert witnesses for the Commonwealth. One testified that, using photographic techniques that he had recently learned, he was able to identify a latent fingerprint of the defendant on the sawed-off shotgun found in his apartment. The other testified that, by comparing stripes or bands running lengthwise in plastic bags, known as die lines, he concluded that the plastic bag in which the victim's body was found had been made on the same day by the same piece of equipment that had made two plastic bags found in the defendant's home.

Neither of the techniques used by the Commonwealth's experts required a showing under the *Frye* test that the technique had gained general acceptance in the field in which it belonged. See *Commonwealth v. Fatalo*, 346 Mass. 266, 268-270 (1963), citing *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). Here the experts presented information based on physical comparisons that they had made using their knowledge of particular techniques (fingerprint testing by a photographic process, and the matching of die lines created in the manufacture of plastic bags). The *Frye* test does not apply in such circumstances. See *Commonwealth v. Cifizzari*, 397 Mass. 560, 569-573 (1986); *Commonwealth v. Beausoleil*, 397 Mass. 206, 215 n.11 (1986); *Commonwealth v. Devlin*, 365 Mass. 149, 154-155 (1974).

4. There is no merit in the defendant's argument that the imposition of consecutive sentences for murder and for the unlawful possession of a sawed-off shotgun violated his constitutional rights. He claims that the consecutive sentences denied him his right not to be subject to multiple punishments for the same offense, arguing that the eighteen to twenty year sentence from and after his life sentence was so long as to show that the judge in effect unlawfully punished him twice for the murder. The premise of the defendant's contention, the judge's allegedly punitive state of mind in sentencing him, is most doubtful in view of the fact that the

judge reduced the verdict to murder in the second degree. In any event, the defendant, who has a heavy burden on the issue, does not even make a reasoned argument that the sentence on the shotgun conviction was disproportionate to the offense for which he was convicted. See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 233-234 (1992); *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 497-499 (1981), appeal dismissed, 455 U.S. 931 (1982). Conviction of that offense can result in a sentence of life imprisonment. G. L. c. 269, § 10 (*c*) (1990 ed.). The consecutive sentences, viewed together, did not, as the defendant argues additionally, amount to unconstitutionally cruel and unusual punishment.

5. The Commonwealth's appeal is meritless. The judge reduced the murder verdict to murder in the second degree, in the exercise of his discretion under Mass. R. Crim. P. 25 (*b*) (2), when he allowed the defendant's motion for a reduction in sentence based on that rule. The judge explicitly took no action on a defense motion, filed the same day, seeking a postverdict required finding of not guilty of murder in the first degree.

The Commonwealth claims that the judge erred in allowing the reduction in the verdict because there was evidence supporting a finding of deliberate premeditation and, hence, a verdict of murder in the first degree. The Commonwealth's argument misses the point. The reduction in the verdict was not based on the absence of evidence warranting a finding of deliberate premeditation but rather was based on the judge's discretionary conclusion that a verdict of murder in the second degree was more consonant with justice than a verdict of murder in the first degree. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 189 (1987); *Commonwealth* v. *Gaulden*, 383 Mass. 543, 555-558 (1981). We have recognized the propriety of a discretionary reduction of a verdict of murder in the first degree when the evidence of premeditation was slim. See *Commonwealth* v. *Millyan*, *supra*. Cf. *Commonwealth* v. *Cobb*, 399 Mass. 191, 192 (1987) (reduction from murder in the second degree to manslaughter); *Commonwealth* v. *Keough*, 385 Mass. 314, 318-321 (1982)

(same). Here the evidence of premeditation was slim. The Commonwealth points only to the physical abuse that the victim had received two months before the killing and to certain of the defendant's postkilling conduct (whose relevancy to the premeditation issue is at least suspect). That evidence may support the verdict (and the defendant does not argue otherwise), but it does not demonstrate that the judge abused his discretion in reducing the verdict. See *Commonwealth* v. *Gaulden, supra* at 557.

The order allowing the motion to reduce the verdict from murder in the first degree to murder in the second degree is affirmed. The judgments of conviction are confirmed.

*So ordered.*