COMMONWEALTH vs. GARY L. COLBY.

Essex. February 5, 1996. - April 8, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Practice, Criminal,* Voluntariness of statement, Assistance of counsel. *Evidence,* Admissions and confessions.

In a murder case, the judge was warranted in concluding that the defendant's statements to Virginia State police officers were voluntary and that misrepresentations of law or fact, if any, by the police officers with respect to the defendant's polygraph examination were not coercive in the circumstances. [416-417]

There was no merit to a criminal defendant's contention that once he had failed a polygraph examination during the course of a police interrogation further Miranda warnings were then required. [417-418]

Error, if any, in Miranda warnings given to a defendant before he confessed to committing a murder was harmless where the defendant had confessed to police substantially the same details on the previous day after having been properly advised of his Miranda rights. [418-419]

INDICTMENT found and returned in the Superior Court Department on September 20, 1989.

A pretrial motion to suppress evidence was heard by *John T. Ronan,* J., and the case was tried before him.

The Supreme Judicial Court granted an application for direct appellate review.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Elin H. Graydon,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. One night in April, 1977, an intruder broke into the Haverhill home of Beverly Autiello and killed her. Initial police investigation was inconclusive, and the matter lay dormant until early 1987 when a Massachusetts State police lieutenant reviewed the file. His investigation led him to focus on the defendant who was then living in Roanoke, Vir-

ginia. The lieutenant told Barry Keesee, a special agent of the Virginia State police, that the lieutenant suspected that the defendant had committed the crime but that without a confession any case against the defendant could not go forward.

This case is here on appeal from the defendant's conviction of murder in the second degree.[1] The issues solely concern events that occurred in Virginia that led to the defendant's confessions that were admitted at his trial. The defendant challenges the denial of his motion to suppress those confessions. He claims that his confession to police in Virginia and his apparent waiver of Miranda rights were the product of deception by Virginia State police agents; that, when his status became custodial in Virginia, further Miranda warnings were required and were not given; and that his confession to the Virginia police was involuntary. Additionally, the defendant claims that a subsequent confession in Virginia to Massachusetts police officers should have been suppressed because the Massachusetts police gave him defective Miranda warnings.

We recite the relevant facts found by the motion judge or accepted as true by the defendant in his brief. Although cooperation from Virginia was requested in 1987, for some reason Officer Keesee made no contact with the defendant until August 28, 1989, when Keesee approached the defendant where he worked. Keesee told the defendant that he wanted to talk with him about a criminal investigation that the Massachusetts State police were conducting. Keesee asked the defendant to come to the State police headquarters two days later.

Two days later, the defendant appeared at the State police headquarters. Keesee told him that his name had come up in a criminal investigation of the death of Beverly Autiello in Massachusetts. The defendant denied knowing anyone by that name and agreed to take a polygraph examination concerning his involvement in Autiello's death.

Agent George Watts of the Virginia State police then conducted a polygraph examination of the defendant. He gave him Miranda warnings, and read him a standards of

---

[1]This court granted the defendant's application for direct appellate review. Because the murder occurred before July 1, 1979, the appeal must be heard in this court, and is subject to G. L. c. 278, § 33E, review. See *Commonwealth* v. *Davis*, 380 Mass. 1, 16-17 (1980).

practice form concerning polygraph tests and an agreement voluntarily to submit to the examination, each of which the defendant signed. Watts also explained that the test was being conducted because of the defendant's possible involvement in a Massachusetts murder, and that the defendant would be advised of the test results before he left that day. The defendant indicated that he understood why he was there. Watts told the defendant, "if you were not involved in this homicide, you are going to pass this test. If you were involved, we'll talk about that after the test is over."[2]

The preliminaries and the polygraph test lasted about one and one-half hours. Keesee watched the proceeding through a one-way mirror. Watts reported his conclusions to Keesee, and returned to the interrogation room where he told the defendant that he had failed the test and explained why. Keesee then joined them, reminded the defendant of the Miranda warnings previously given, and began questioning the defendant. Less than five minutes later, the defendant confessed to the crime. Later he signed a written confession in which he acknowledged that his statements were freely given after he had received his rights.

The motion judge ruled that the defendant received timely Miranda warnings and found beyond a reasonable doubt that he had voluntarily and knowingly agreed to discuss the case. The judge also ruled that renewed Miranda warnings were not required after the defendant failed the polygraph test. He concluded that the Virginia police practiced no deceit or duress and that the defendant's will was not overborne. He denied the motion to suppress the statements that the defendant had given to the Virginia police.

1. The defendant argues that Virginia police used deceit to obtain the defendant's confession because Agent Watts misrepresented that the polygraph test was infallible and because he said, assuming that he did (see note 2 above), that the test results were admissible in Virginia. Watts did not expressly represent that the test was infallible. His comments that, if the defendant was not involved, he would pass the

---

[2]Keesee testified that Watts told the defendant that the result of the test was admissible in a Virginia court of law. Watts, however, testified that he made no statement on the subject. In his findings the motion judge did not resolve this conflict. The consent form that the defendant signed stated that he had no objection to the use of the test results for any lawful purpose.

test, and that, if he did not pass the test, there would be further discussion, were relatively innocuous in the context of the entire process that led to the confessions. If Watts did say that the test results were admissible in Virginia, it was a misstatement. See *Odum* v. *Commonwealth*, 225 Va. 123, 132 (1983). Such a statement and any implication of the infallibility of the polygraph test pale beside the intentionally false police representations that this court recently has held did not compel the conclusion that defendants' subsequent admissions were not voluntarily made. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 669, 673-674 (1995) (police falsely and intentionally told defendant that his handprint had been found in the building where crime had been committed; suppression not required in totality of circumstances); *Commonwealth* v. *Selby*, 420 Mass. 656, 658-659, 663-664 (1995) (police falsely and intentionally told defendant that his handprint had been found in victim's home and his fingerprints had been found on shell casings there; suppression not required in totality of circumstances).

The judge was warranted in concluding that the defendant's statements to the Virginia police were voluntary and that the police conduct, even considering any misrepresentations of law or fact, was not coercive. The defendant had two days before he was questioned to reflect on his situation. He received Miranda warnings. He had further time to reflect on whether to submit to a polygraph examination and thereafter whether to talk further.

2. There is no merit to the defendant's argument that further Miranda warnings were required, once he failed the polygraph examination, became a suspect, and his status became custodial. There was no break in the interrogation process; Miranda warnings were given at the commencement of the polygraph testing; and only a few hours elapsed from the beginning to the end of the process. See *Commonwealth* v. *Edwards, supra* at 671; *Commonwealth* v. *Mello*, 420 Mass. 375, 385-386 (1995), and cases cited (six-hour interval). The fact that Miranda warnings were given before the defendant was in custody makes no difference here, especially where a police officer reminded the defendant of his rights before interrogating him after the situation became custodial. See *Commonwealth* v. *Alicea*, 376 Mass. 506, 513-514 (1978); *Commonwealth* v. *Cruz*, 373 Mass. 676, 687-688 (1977); *State*

v. *Burge*, 195 Conn. 232, 248-249 (1985). The fact that the defendant failed the polygraph examination did not require new Miranda warnings. Cf. *Wyrick* v. *Fields*, 459 U.S. 42, 48-49 (1982) (per curiam).

3. The defendant argues briefly that the judge should have suppressed the confession he gave in Virginia to Massachusetts police officers on the day after his confessions to Virginia authorities. He bases his argument on the fact that, in giving him Miranda warnings, one of the Massachusetts officers departed from the standard form, telling the defendant that "if he could not afford an attorney, the Commonwealth would attempt to provide one for him."

We shall assume that the accurate Miranda warnings of the day before did not neutralize this departure from standard Miranda language. We shall further assume that, where, as here, there was no evidence bearing on the defendant's indigency, the Commonwealth has the burden of showing that a defendant was not indigent, and that such a misstatement as to the right to counsel could not have caused any harm. See 1 W.R. LaFave & J.H. Israel, Criminal Procedure § 6.8, at 519 (1984). The Massachusetts police officer properly advised the defendant that he had a right to have an attorney present at all times during the interrogation, that anything he said could be used against him in court, and that at any time he could stop the questioning. The defendant did not ask for a lawyer.

It may be that the purposes of Miranda warnings were adequately served by the warning given. See *Duckworth* v. *Eagan*, 492 U.S. 195, 198, 203-204 (1989) (five-to-four decision) (Miranda requirements satisfied where defendant was told: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court"). Miranda warnings are the product of Federal constitutional principles. We have not been asked to apply any State law principles to this issue, such as adopting the views of the dissent in the *Duckworth* case. See *Duckworth* v. *Eagan, supra* at 214 (Marshall, J., dissenting). The departure from the standard Miranda language here seems less harmful than the departure tolerated in the *Duckworth* case.

Even if there was a violation of Miranda principles, the defendant's confessions to the Virginia police on the previous day would not be tainted because poisonous fruit does not taint a healthy tree. Although the second day's confession

adds certain details, the confessions do not differ significantly in substance, and the defendant does not argue that they do. The Miranda error, if there was one, was undoubtedly harmless. See *Commonwealth* v. *Ghee*, 414 Mass. 313, 318-319 (1993).

4. The defendant is not entitled to relief under G. L. c. 278, § 33E (1994 ed.).

*Judgment affirmed.*