## COMMONWEALTH *vs.* SAMUEL DAVIS.

No. 02-P-49.

Middlesex. April 9, 2003. - June 27, 2003.

Present: MASON, KANTROWITZ, & DOERFER, JJ.

*Controlled Substances. Evidence,* Voluntariness of statement, Chain of custody. *Practice, Criminal,* Voluntariness of statement, Mistrial.

At a criminal trial, any error that may have occurred in the judge's permitting a police officer to relate the defendant's statements while in custody, on the ground that the Commonwealth had failed to establish that the police had enumerated each of the defendant's Miranda rights, was harmless beyond a reasonable doubt, where the evidence of the defendant's guilt, independent of the contents of his statements to the officer at the police station, was strong. [415-417]

At the trial of indictments charging the defendant with possession of cocaine with intent to distribute, second offense, during the course of which the judge dismissed one of the indictments, the judge did not abuse her discretion in denying the defendant's motion for a mistrial made after the jury submitted a question regarding what evidence they were allowed to use from the incident giving rise to the dismissed indictment, where the judge could reasonably construe the question as evidencing the jury's close attention to the judge's instructions with respect to the incident rather than an unwillingness to comply with those instructions, and where, having answered "none" to the question, the judge could assume that the jury had understood and would comply with that answer. [417-418]

At the trial of indictments charging the defendant with possession of cocaine with intent to distribute, second offense, the judge did not err in admitting in evidence a bag of cocaine, where the absence of the original packaging of the cocaine, as testified to by a police officer who had received the cocaine from a person whom the officer had recruited to make a controlled purchase of drugs from the defendant, was not fatal to the Commonwealth's proof that the substance produced at trial was the same as the substance received by the officer. [419]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1999.

The cases were tried before *Elizabeth Butler,* J., and a motion for a new trial was heard by her.

*Alan D. Tuttman* for the defendant.

*Miranda Hooker* (*Peter A. D'Angelo*, Assistant District Attorney, with her) for the Commonwealth.

MASON, J. A grand jury returned two indictments (nos. 99-579-001 and 99-579-002) charging the defendant with possession of cocaine with intent to distribute, second offense, on January 6, 1999, and on January 21, 1999, respectively. At an ensuing jury trial, the judge dismissed the first indictment at the conclusion of the Commonwealth's case on the ground that the evidence was insufficient to warrant a finding beyond a reasonable doubt that the defendant was guilty of that charge. The jury found the defendant guilty of the primary charge alleged in the second indictment.

The defendant filed a consolidated motion for a required finding of not guilty, mistrial, and for a new trial. After the judge denied the motion, the defendant pleaded guilty to the second offense portion of the second indictment.[1]

On appeal from his conviction and from the denial of his new trial motion, the defendant claims that the judge erred in admitting in evidence a statement the police obtained from him in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). He also claims that the judge erred in failing to declare a mistrial when it became clear that the jury were confused as to how to treat the evidence that was admitted pertaining to the first indictment prior to its dismissal, and in admitting in evidence the cocaine that was the subject of the transaction alleged in the second indictment. We affirm the conviction.

*Background.* The Commonwealth presented evidence that allowed the jury to find the following. In early January, 1999, Sergeant David MacDonald of the Newton police department recruited Nicholas "Jimmy" Dickens to make a controlled buy of drugs from the defendant.

On January 21, 1999, Sergeant MacDonald met with Dickens in a parking lot in Waltham, searched him and his car to ensure that no drugs were present, and then gave Dickens one hundred dollars in five twenty-dollar bills. He followed Dickens as he drove to the defendant's office in Newton.

[1]Despite his plea, the defendant preserved his right to appeal on the ground that the predicate conviction was invalid.

When Dickens arrived at the building in which the defendant's office was located, he was observed there by two other Newton police officers. Dickens parked his car, entered the building, and walked directly to the defendant's office, where he found the defendant.

Dickens asked the defendant if he could purchase one hundred dollars' worth of cocaine. After telling Dickens to wait five minutes, the defendant left his office, returned a short time later, and gave Dickens a nickel-sized packet of cocaine in exchange for his money. Dickens then left the defendant's office, reentered his car, and, followed by Sergeant MacDonald, drove to a previously arranged meeting place. At that location, Sergeant MacDonald obtained the packet of cocaine.

On January 28, 1999, at about 2:00 P.M., Sergeant MacDonald again met with Dickens at the parking lot in Waltham and gave him a second one hundred dollars in five twenty-dollar bills that had been photocopied so that they could be tracked.

Dickens once again went to the defendant's office and asked for a gram of cocaine. The defendant responded that he did not have any cocaine at that time, but would be picking some up later in the day. Dickens gave the defendant the five twenty-dollar bills he had received from Sergeant MacDonald and agreed to return to pick up the cocaine.

After Dickens had left the defendant's office, Sergeant MacDonald and another officer entered the building and arrested and searched the defendant. They found the five twenty-dollar bills that Sergeant MacDonald had given to Dickens.

The defendant was then transported to the Newton police station and booked. After the booking process had been completed, Sergeant MacDonald and another officer met with the defendant and asked him where he had obtained his cocaine. The defendant responded that he had two main sources for such cocaine, a person in the Allston-Brighton section of Boston and another person in the Roxbury section, but that he did not know their names.

Dickens testified at trial. The Commonwealth also called as witnesses Sergeant MacDonald and several other officers, including the supervisor of the evidence room at the Newton police station. The supervisor described the regular procedures concerning the handling of the drugs recovered from arrests,

including sending the drugs for analysis at a laboratory operated by the Department of Public Health.

The defendant did not present any evidence at trial. His primary defense was that no transaction had occurred on January 21, 1999, and his strategy was to raise doubts about Dickens's credibility.

1. *Miranda issue.* Before asking Sergeant MacDonald to relate what the defendant had stated to him during the interview at the police station, the prosecutor asked Sergeant MacDonald whether the defendant had been apprised of any "rights." Sergeant MacDonald responded that the defendant was apprised of his "rights" both during the booking procedure and also at the start of the interview. The prosecutor then asked Sergeant MacDonald to relate what the defendant had stated during the interview, but defense counsel objected. The judge sustained the objection on the ground that Sergeant MacDonald had failed to specify the rights given to the defendant.

Asked by the prosecutor to enumerate the specific rights that the defendant had been given, Sergeant MacDonald responded that the defendant had been given his "Miranda rights," including "his right to counsel; his right to remain silent; his right to have an attorney present during questioning if he so desired; [and] his right to stop answering questions at any time if he elected to converse." The prosecutor then showed Sergeant MacDonald a document and asked him whether the document had prompted him to remember any additional rights that the defendant had been given. After initially responding that the defendant "would have been given those rights in their entirety," Sergeant MacDonald repeated substantially the same list.

The prosecutor then again asked Sergeant MacDonald to recount what the defendant had stated to him during the interview. Defense counsel again objected, but this time the judge overruled the objection and permitted Sergeant MacDonald to answer. Sergeant MacDonald proceeded to relate the defendant's statements about having two main sources of cocaine.

The defendant claims that the judge erred in permitting Sergeant MacDonald to relate the defendant's statements

because the Commonwealth had failed to establish that the police had enumerated each of the rights delineated in *Miranda* v. *Arizona, supra,* which include warning the defendant that any statement he makes may be used as evidence against him. We agree with this assertion since there was, in fact, no evidence that the defendant was given this required warning. See *Commonwealth* v. *Adams,* 389 Mass. 265, 268-269 (1983); *Commonwealth* v. *Vuthy Seng,* 436 Mass. 537, 544, cert. denied, 537 U.S. 942 (2002). The Commonwealth asserts that we may assume that the document the prosecutor showed to Sergeant MacDonald during his testimony was a Miranda card and may thereby infer from his statement that the defendant was given "those rights in their entirety" that the defendant was, in fact, advised of each of his Miranda rights. The document, however, was not identified as a Miranda card and was not made an exhibit or marked for identification. Hence, we may not assume anything with respect to it. Compare *Commonwealth* v. *Alcala,* 54 Mass. App. Ct. 49, 54 n.7 (2002).

The proper method for challenging the admissibility of a statement on Miranda grounds, however, is to file a pretrial motion to suppress or to request a voir dire. See Mass.R.Crim.P. 13(c)(2), 378 Mass. 873 (1979); *Commonwealth* v. *Woods,* 419 Mass. 366, 370 (1995). Here, the defendant merely objected when the prosecutor first asked Sergeant MacDonald to relate what the defendant had said to him, and he did not ask for a bench conference or otherwise indicate the discrete ground for his objection. Nor did he do so even after the prosecutor, in response to the judge's direction, asked Sergeant MacDonald to relate the precise rights that the defendant had been given. In the absence of any such minimum specification, we doubt that defense counsel's general objections were sufficient by themselves to preserve for appeal the precise issue that the defendant is now seeking to raise. See *Commonwealth* v. *Woods, supra* at 372; *Commonwealth* v. *Rivera,* 425 Mass. 633, 636 & n.2 (1997); *Commonwealth* v. *Houghtlin,* 16 Mass. App. Ct. 691, 694-696 (1983), and cases cited. Contrast *Commonwealth* v. *Adams, supra* at 267-270; *Commonwealth* v. *Rubio,* 27 Mass. App. Ct. 506, 509-510 (1989).

We need not decide this issue, however, because we conclude

that any Miranda error, even if it occurred, was harmless beyond a reasonable doubt in the circumstances of this case. *Commonwealth* v. *Ghee*, 414 Mass. 313, 318-319 (1993) ("harmless error analysis is appropriate as to the admission in evidence of statements obtained in violation of the Miranda rule"). The evidence of the defendant's guilt, independent of the contents of his statements to Sergeant MacDonald at the police station, was strong. It included not only Dickens's eyewitness account of the transaction that occurred on January 21, 1999, but also the testimony of Sergeant MacDonald that he had searched Dickens and his car immediately before the transaction occurred and had not found any cocaine in his possession and then had met with him immediately after the transaction and received the cocaine. It also included the five twenty-dollar bills that Sergeant Mac-Donald recovered from the defendant at the time of his arrest. In view of this and the other evidence corroborating Dickens's eyewitness testimony, we are confident that, even if there was an error in the judge's admission of the defendant's statements to Sergeant MacDonald, any such error was harmless beyond a reasonable doubt.[2] *Id.* at 319-320. See *Commonwealth* v. *Ghee*, *supra* at 318; *Commonwealth* v. *Colby*, 422 Mass. 414, 418-419 (1996).

2. *Denial of mistrial.* Prior to the judge's dismissal of the first indictment (no. 99-579-001), the Commonwealth introduced evidence that Dickens had participated in an earlier controlled buy of cocaine from the defendant on January 6, 1999, in the same manner as he subsequently did on January 21, 1999. When the prosecutor thereafter attempted to introduce in evidence the substance that was allegedly the subject of the January 6 transaction, together with a laboratory report, the judge ruled that the substance was inadmissible because of uncertainty about the chain of custody linking the substance Dickens purchased to the substance analyzed.

---

[2]We recognize that, at one point during his closing argument, the prosecutor referred to the defendant's statements to Sergeant MacDonald as one "piece of the puzzle" they should consider in determining the defendant's innocence or guilt. The prosecutor, however, did not dwell on this evidence or emphasize its significance. Rather, he referred to it only as one of many facts establishing the defendant's guilt. Contrast *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 483-484 (1993).

Upon ruling that this evidence was inadmissible, the judge allowed the defendant's motion for a required finding of not guilty with respect to the indictment pertaining to the January 6 incident and instructed the jury that they should not consider either the incident or the indictment relating to the incident. The judge repeated this instruction both prior to the closing arguments and during her final charge. More specifically, the judge instructed the jury during her final charge:

> "You are not to consider any evidence concerning the alleged occurrences on January 6, 1999, jurors, because, as I've said, that particular indictment will not be considered by you, and you're not to speculate as to why that is."

Still later, during their deliberations, the jury sent a question to the judge asking, "What information are we able to use from January 6, 1999?" After conferring with counsel, the judge responded: "Dear jurors, you are to use none of the information concerning January 6, 1999."

Notwithstanding these repeated and forceful instructions, the defendant claims that the judge should have granted a request he made for a mistrial at the time the jury submitted their question to the judge as the question itself evidenced an inability on the part of the jury to prevent any evidence it had heard with respect to the January 6 incident from "seeping" into their deliberative process.

It is well settled, however, that "[t]he decision whether to declare a mistrial is within the judge's discretion." *Commonwealth* v. *Maldonado*, 389 Mass. 626, 629 (1983). *Commonwealth* v. *Robertson*, 408 Mass. 747, 753 (1990). Here, the judge could reasonably construe the jury's question as evidencing close attention to her instructions with respect to the January 6 incident rather than an unwillingness to comply with those instructions, as the defendant suggests. In any event, having answered "none" to the jury's question, the judge could assume that the jury had understood and would comply with that answer. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 451 (1988); *Commonwealth* v. *Robertson*, *supra* at 752-754. See also *Commonwealth* v. *Gallagher*, 408 Mass. 510, 518 (1990). The judge did not abuse her discretion in denying the motion for a mistrial.

.

3. *Evidentiary issue.* During his testimony, Sergeant Mac-Donald explained that the normal procedure that Newton police officers followed when they recovered evidence such as the cocaine involved in the January 21 incident was to place the evidence in a plastic bag and then mark on the bag the date of the incident, the location where the evidence was found, the case number assigned to the matter, and the initials of the investigating officer placing the evidence into the bag. Based on this testimony, the judge allowed in evidence a bag containing a substance that Sergeant MacDonald identified as the substance Dickens had handed to him following the transaction occurring on January 21, 1999, together with a certificate from the Department of Public Health laboratory indicating that the substance was cocaine. The bag was marked with the date and time when the transaction occurred, and also the case number assigned to the matter, and it was also initialed by one of the investigating officers.[3]

The defendant nevertheless claims that the judge erred in admitting this bag and certificate in evidence because Sergeant MacDonald had testified that the cocaine he had received from Dickens following the January 21 incident was contained in a small paper fold, but the bag produced at trial failed to contain any such paper fold.

The mere absence of the original packaging, however, was not fatal to the Commonwealth's proof that the substance produced at trial was the same as the substance received from Dickens by Sergeant MacDonald. It went at most to the weight of the evidence and not to its admissibility. See *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992); *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 309 (1992).

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[3]By contrast, the bag containing the substance that was allegedly the subject of the January 6 transaction was initialed only by the supervisor, and not by any of the investigating officers. It was on this basis that the judge excluded from evidence the substance that was allegedly the subject of the January 6 transaction, but admitted in evidence the substance that was allegedly the subject of the January 21 transaction.