COMMONWEALTH *vs.* PAUL C. TOFANELLI.

No. 05-P-66.

Plymouth. December 16, 2005. - August 8, 2006.

Present: ARMSTRONG, C.J., LAURENCE, & KANTROWITZ, JJ.

*Controlled Substances. Practice, Criminal,* Required finding.

Evidence at a criminal trial was sufficient to convict the defendant of distribution of a class B substance. [63-64]

A District Court judge properly denied a criminal defendant's motion for a required finding of not guilty on a charge of distributing a counterfeit substance under a theory of joint venture, where the evidence was sufficient to prove that the defendant knew that his coventurer intended to sell counterfeit pills. [64-66]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on March 23, 2001.

The case was heard by *James F.X. Dinneen,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. Following a jury-waived trial, a District Court judge convicted the defendant of distribution of a class B substance (methylenedioxy methamphetamine, commonly known as "ecstasy") and distribution of a counterfeit substance, both in connection with a March 22, 2001, sale to an undercover detective. The judge found the defendant not guilty on an additional distribution of ecstasy charge related to a March 10, 2001, transaction.

On appeal, the defendant claims that he was entitled to a required finding of not guilty on the two charges that resulted in the convictions.

*Background.* We review the defendant's motion for a required

finding through our familiar inquiry into "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). With this standard of review in mind, the judge could have found the following pertinent facts based on the evidence and all reasonable inferences drawn from that evidence.[1]

In approximately March, 2001, the Brockton police department launched an investigation into an ecstasy distribution ring operating out of 730 North Main Street in the city of Brockton. Detective Paul Bonanca of the department's narcotics unit made six undercover ecstasy purchases over the course of the investigation. In addition to the defendant, Detective Bonanca had exchanges with three other individuals involved in the drug ring. One of these individuals was Luis Marrero, who engaged in hand-to-hand transactions with Detective Bonanca on March 1 and March 16, 2001.

On March 22, 2001, Detective Bonanca initiated an undercover purchase of ecstasy. Using the same telephone number he had dialed to arrange prior drug buys, Detective Bonanca told the male recipient of his call that he wanted to purchase fifty pills. The man responded that it would cost $700, and he agreed to Detective Bonanca's request of two free pills given the volume of the sale. Arrangements were then made to meet at a local Shell Oil Company service station.

Detective Bonanca was waiting at one of the gas pumps when a purple Honda Civic automobile driven by Marrero, and occupied by the defendant, entered the Shell station. This Honda Civic had been observed in the driveway of 730 North Main Street during the investigation. Detective Bonanca began walking in the direction of the parked Honda Civic when Marrero left that vehicle and told him they would meet in Detective Bonanca's vehicle. The defendant remained seated in the passenger seat of the Honda Civic.

After Marrero entered Bonanca's vehicle, the detective

[1]We reserve reference to certain facts for our discussion of the issues.

handed him $700, which had been photocopied to track the money. Marrero gave him a bag containing fifty pills in return.[2] Detective Bonanca inquired about the two free pills, and he and Marrero then walked back to the Honda Civic. Marrero began speaking with the defendant, who was still seated on the passenger side. The defendant opened the glove compartment and took out two white pills inscribed with the letter "K." Detective Bonanca observed numerous other pills located in the glove compartment. The defendant handed the two pills to Marrero, who then gave them to Detective Bonanca.[3]

Police pursued the Honda Civic following Detective Bonanca's notification that he had made the buy, but they lost sight of the car after a brief chase. At the same time, a search warrant was being executed at 730 North Main Street. The defendant placed a phone call to the residence while the search was being conducted. The call was answered by a female occupant of the house (a girlfriend of either Marrero or his brother) at the request of Detective George Khoury. The defendant's voice sounded desperate and frantic.

The defendant was arrested a short time later at a liquor store located less than a mile from the Shell station. A search of his person revealed $1,555 in cash, which included the buy money Detective Bonanca had given Marrero that evening. The defendant was also in possession of the cellular telephone that had been used to make the phone call to 730 North Main Street during the execution of the search warrant.

*Discussion.* The defendant ignores the evidence in arguing that the judge was left to speculate that the two free pills Detective Bonanca received on March 22, 2001, were the same ones that later tested positive for the drug. At trial, Detective Bonanca identified one of the pills that tested positive for ecstasy as the same one given to him in the March 22 transaction.[4] This testimony about a white pill inscribed with a "K" was all that

[2]These fifty pills were later certified by the State Laboratory as not containing illegal narcotics, leading to the defendant's conviction on the charge of distribution of a counterfeit substance.

[3]The defendant was convicted of distribution of ecstasy in connection with this transaction.

[4]According to Detective Bonanca, the second pill was likely destroyed during the analysis conducted by the State police.

was required to authenticate the drugs. See *Commonwealth* v. *White*, 353 Mass. 409, 419 (1967), cert. denied, 391 U.S. 968 (1968) (identification of cartridge casing enough to admit in evidence); *Commonwealth* v. *Andrews*, 403 Mass. 441, 462 (1988) (testimony identifying jacket as the same one defendant wore on the night offense committed was sufficient to authenticate it). Cf. *Commonwealth* v. *Carlton*, 43 Mass. App. Ct. 702, 705 (1997). Evidence establishing a chain of custody was, therefore, not necessary.[5] *Commonwealth* v. *Andrews*, *supra.*

The defendant's assertion that the wrong pills may have been tested goes only to the weight, and not to the admissibility, of the evidence. See *Commonwealth* v. *Ortiz*, 424 Mass. 853, 860 (1997); *Commonwealth* v. *Davis*, 58 Mass. App. Ct. 412, 419 (2003). Determinations of weight and credibility are, of course, within the province of the finder of fact, see *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005), and the judge could properly find that the two pills containing ecstasy were the free pills handed to Detective Bonanca on March 22. There was sufficient evidence to convict the defendant on this ecstacy distribution charge.

As to the charge of distributing a counterfeit substance, the defendant argues that the judge should have allowed his motion for a required finding of not guilty because there was insufficient evidence to prove that he knew Marrero intended to sell counterfeit pills.[6] We disagree. The Commonwealth presented ample evidence to establish the defendant's guilt under a theory

---

[5]As the Commonwealth correctly argues, the rescript opinion cited by the defendant, *Commonwealth* v. *Senbatu*, 38 Mass. App. Ct. 904 (1995), concerns neither authentication of evidence nor chain of custody and is inapposite to this case.

Additionally, the inventory list on the March 22, 2001, evidence envelope is of no help to the defendant. It can be reasonably inferred from the descriptive nature of the inventory that only two pills in the envelope were marked with any kind of "K" inscription and that, therefore, the pills listed on the envelope as "KO" were the same two pills that Detective Bonanca testified to receiving on March 22.

[6]General Laws c. 94C, § 32G, as appearing in St. 1982, c. 650, § 13, provides, "Any person who knowingly or intentionally creates, distributes, dispenses or possesses with intent to distribute or dispense a counterfeit substance shall be punished by imprisonment in a jail or house of correction for not more than one year or by a fine of not less than two hundred and fifty

of joint venture.[7] Because the defendant's challenge goes only to the second prong of the test for joint venture — whether he had knowledge that the fifty pills sold to Detective Bonanca were counterfeit — we limit our inquiry accordingly.[8]

The evidence presented at trial, viewed in the Commonwealth's favor, was sufficient to prove that the defendant possessed the requisite knowledge. "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Hoa Sang Duong*, 52 Mass. App. Ct. 861, 867 (2001), quoting from *Commonwealth* v. *Mattos*, 49 Mass. App. Ct. 218, 222 (2000). Such inferences "need only be reasonable and possible and need not be necessary or inescapable," *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988), and a defendant's guilt may be established by circumstantial evidence alone. *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005).

The judge could have reasonably inferred from the evidence that the defendant partnered with Marrero to sell the fifty counterfeit pills to Detective Bonanca. The deal Detective Bonanca struck prior to the sale was for two free pills to be included in the larger purchase of fifty pills. The two free pills were thus part and parcel of the larger transaction. The defendant's role in facilitating the transfer of the two pills from the glove compartment, which contained numerous other pills, allowed for the inference that he had knowledge of the inventory and the authority to select which items to sell. Further militating against the defendant's claimed ignorance was the

---

nor more than two thousand and five hundred dollars, or both such fine and imprisonment."

[7]One way of proving joint venture is to establish that a defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997), quoting from *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988).

[8]At any rate, as will be referenced in our discussion of the defendant's knowledge, the evidence warrants a finding that the defendant was present during the sale in question and that he was an active participant in the transaction.

discovery of the buy money on his person following his arrest and, after the car chase, his frantic phone call to the residence out of which the ecstasy ring was operating. Indeed, from the mere fact that the defendant was a seller of drugs, the judge, as finder of fact, could properly draw the inference that the defendant knew what he was selling. The judge was not required to credit the defendant's attempt to minimize his involvement in the transaction.[9] See *ibid.* The cumulative weight of the evidence, together with all reasonable inferences therefrom, was sufficient to establish the defendant's knowledge.

The judge properly denied the defendant's motion for a required finding of not guilty on both distribution charges.

*Judgments affirmed.*

---

[9]Nor was the judge required to accept the defendant's argument that the knowing sale of counterfeit ecstasy pills was counterintuitive because it was bad for business in the long run.