STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CRIMINAL ACTION
                                        Docket No. AUGSC-CR-14-1144


STATE OF MAINE,                  )
                                 )
                                 )
                                 )      **ORDER ON MOTION TO SUPRESS**
        v.                       )
                                 )
TIFFANY D. GLIDDEN,              )
                                 )
                                 )

Defendant Tiffany D. Glidden (hereinafter "defendant") moves to suppress any

and all statements, physical evidence, test results, and/or eyewitness identifications on

two grounds: 1) the evidence was obtained after she asserted her Sixth Amendment right

to counsel; and 2) the *Miranda* warnings she received did not adequately inform her of

her right to counsel.[1] For purposes of the present motion, the parties have stipulated that

the defendant was in custody at all pertinent times.

**I. Whether Defendant Invoked Her Right to Counsel:**

On November 5, 2014, defendant arrived at the Waterville Police Department.

Officer William Bonney of the Waterville Police Department met the defendant in the

parking lot and escorted her to an interrogation room to await the arrival of Detective

Bryant Jacques of the Maine State Police. Officer Bonney had known the defendant for a

number of years through his work in the Waterville community. Prior to Detective

Jacques' arrival, Officer Bonney spoke briefly with the defendant. During this

conversation, the defendant asked Officer Bonney a question on which she bases her

argument that she invoked her right to counsel. In particular, the defendant maintains she

---

[1] At the hearing, counsel for Ms. Glidden clarified that, for the purposes of the present
motion, she was not pursuing her argument that her statements were involuntary.

invoked her right to counsel by asking, "I want my lawyer, what do I do?" The State contends the defendant was not invoking her right to counsel, but was instead asking, "If I want a lawyer, what do I do?"

At the hearing, the State introduced a DVD that contained both an audio and an audio-visual recording of the conversation. The following is a transcription of the pertinent conversation between the defendant and Officer Bonney:

| | |
|---|---|
| Ms. Glidden: | If I want a lawyer, what do I do? |
| Officer Bonney: | Tell him. |
| Ms. Glidden: | Tell him? |
| Officer Bonney: | Um huh. |
| Ms. Glidden: | I think I have one, but for a different case. |
| Officer Bonney: | Um huh. |
| Ms. Glidden: | She's my criminal lawyer. I didn't go to trial last week. |
| Officer Bonney: | Did you fail to appear? |
| Ms. Glidden: | Yeah, for unpaid fines. |

Approximately one week after the defendant's arrest and interrogation, Officer Bonney wrote a report of the events and provided it to the District Attorney's office. In the report, Officer Bonney stated that the defendant had asked him, "What do I do if I want a lawyer?" The report notes that Officer Bonney informed Detective Jacques of this question well after Detective Jacques read the defendant her *Miranda* rights.

Upon reviewing the audio and audio-visual recording of the interaction, at the suppression hearing Officer Bonney conceded that his recollection of defendant's question was not accurate. Instead of asking, "What do I do if I want a lawyer," Officer

2

Bonney maintained that defendant asked, "If I want a lawyer, what do I do?" At the hearing, the defendant testified that she recalled asking Officer Bonney, "I want my lawyer, what do I do?"

In *Miranda v. Arizona*, the U.S. Supreme Court established that a suspect subject to custodial interrogation has the right to consult with an attorney and to have an attorney present during questioning pursuant to the Fifth Amendment. *State v. Nielsen*, 2008 ME 77, ¶ 15, 946 A.2d 382 (discussing *Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966))[2]. If a suspect invokes her right to counsel at any time during an interview with police, she "is not subject to further questioning until a lawyer has been made available or the suspect [her]self reinitiates conversation." *Id.* (quoting *Davis v. United States*, 512 U.S. 452, 458 (1994)). A valid waiver of the right to counsel "cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if [s]he has been advised of [her] rights." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981).

"In order to invoke one's Fifth Amendment right to counsel, one must do so unambiguously." *Id.* at ¶ 16 (citing *Davis*, 512 U.S. at 459); *see also Maryland v. Shatzer*, 559 U.S. 98, 103-04 (2010). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* (quoting *Davis*, 512 U.S. at 459). Whether a defendant has invoked her right to counsel is an objective inquiry. *Id.*

---

[2] The Law Court has never adopted an equivalent to the *Miranda* rule or held that a violation of the *Miranda* safeguards requires application of an exclusionary rule as a matter of state constitutional law. *State v. Durepo*, 472 A.2d 919 (M3. 1984).

Once in custody, a defendant does not necessarily invoke her right to counsel every time she uses the word "lawyer" or "attorney." *Id.* at ¶ 17. For example, a defendant's statement that he had "talked too much the way it is anyway, without a lawyer" did not amount to even an ambiguous request for an attorney. *Id.* (discussing *State v. McCluskie*, 611 A.2d 975, 977 (Me. 1992). Similarly, a defendant's statement in response to *Miranda* warnings that "his right to an attorney meant that 'I should wait until I see a lawyer,' was found to be an ambiguous invocation of the right to counsel, and his clarification that he would speak with the police officer at that time served as an unambiguous, valid waiver of the right." *Id.* (discussing *State v. Alley*, 2004 ME 10, ¶ 28, 841 A.2d 803).

Here, the undersigned has reviewed both the audio and audio-visual recordings of the defendant's conversation with Officer Bonney multiple times. Although the conversation is less clear in the audio file, the audio-visual recording makes clear that the defendant asked, "If I want a lawyer, what do I do?" This question does not constitute an unambiguous assertion of the right to counsel and does not support Ms. Glidden's motion to suppress. *See State v. Lockhart,* 830 A.2d 433,444 (Me. 2003)(defendant's question as to whether officer thought defendant needed a lawyer was just that, a question, and the officer properly answered it. Neither the question, nor the exchange between the officer and defendant that followed, served to invoke defendant's right to an attorney.)

In summary, the undersigned finds the defendant did not invoke her right to counsel prior to being questioned by either Officer Bonney or Detective Jacques.

4

## II. Whether Detective Jacques' *Miranda* Warnings Adequately Advised Defendant of Her Right to Counsel:

Following the aforementioned conversation, Detective Jacques arrived and began questioning the defendant. At the time of the questioning, defendant was twenty years old, sober, and had a tenth grade education. With defendant's permission, Officer Bonney stayed in the interrogation room for Detective Jacques' questioning. Following some preliminary questions, Detective Jacques purported to provide the defendant with the *Miranda* warnings. The audio and audio-visual recordings of the interrogation reveal the following pertinent interaction between the Detective and defendant:

Detective Jacques: I want to ask you some questions. Before I do so I want to explain your rights. If you have any questions ask me. You have the absolute right to remain silent. Do you understand that?

Defendant: Yes.

Detective Jacques: Which means you don't have to say anything if you don't want to, all right? Anything you say can and will be used against you in a court of law. Do you understand that?

Defendant: Yes.

Detective Jacques: You have the absolute right to the advice of a lawyer before any questioning and to the presence of a lawyer here with you during questioning. Do you understand that?

Ms. Glidden: Yes.

Detective Jacques: I mean I can't produce you a lawyer, I mean we're not at that step in the process like we're in a courtroom that's not where we're at here, you came down to the police station and we're trying to get you know answer some questions about what happened and I'm willing to listen. Do you understand what that means?

Ms. Glidden: Yes.

Detective Jacques: And if you want to call a lawyer you can at some point, ok?

Ms. Glidden: Ok.

Detective Jacques: If you can't afford a lawyer one will be furnished to you free before any questioning if you desire. Do you understand that?

Ms. Glidden: Yes.

Detective Jacques: If you decide to answer questions now with or without a lawyer present, Tiffany, you have the right to stop answering any time or to stop answering at anytime until you can talk to a lawyer, do you understand that?

Ms. Glidden: Yes.

Detective Jacques: So if you agree to speak with me, us and at some point we're going through this and at some point you just don't want to talk anymore for whatever reason just say that, that's fine, Ok?

Ms. Glidden: Ok.

. . .

Detective Jacques: Tiffany, now having all those rights which I explained to you in mind, do you wish to answer questions at this time with me?

Ms. Glidden: Some. Depends on the questions, but yeah, for the most part.

Detective Jacques: Ok that's kind of what we went over right,

Ms. Glidden: Yeah

Detective Jacques: Ok, so can I check off yes on here or no?

Ms. Glidden: (sighs) Yeah, I will answer some.

6

While Detective Jacques provided Ms. Glidden the *Miranda* warnings, he filled out a *Miranda* warning form.[3] Ms. Glidden, Detective Jacques, and Officer Bonney signed the form, on which "yes" is checked off in response to the question:

> You have the absolute right to the advice of a Lawyer before any questioning, and to the presence of a Lawyer here with you during questioning. Do you understand that?

The form also contains the handwritten response, "Yeah (will answer some) in response to the question, "[n]ow having all those rights which I just explained to you in mind, do you wish to answer questions at this time?" The response, "Yeah (will answer some)" is handwritten on the form.

At the hearing, Ms. Glidden testified that based on the warning Detective Jacques provided, she did not think she could call her attorney at that time. She explained that she did not ask to speak to an attorney because she was not in court and did not think it was time. During cross-examination, Ms. Glidden conceded that she has been arrested before and has had multiple attorneys represent her in the past. She also conceded that following the conversation with Officer Bonney, discussed *supra* in section I, she did not invoke her right to an attorney over the course of the six hours she was interviewed and did not tell Detective Jacques she wanted an attorney as Officer Bonney instructed her. The undersigned finds defendant's testimony that she didn't think she could call her attorney at the time of the interrogation and that she did not ask to speak to an attorney because she was not in court and did not think it was time to do so not credible.

In her motion, defendant contends the *Miranda* warnings she received were not adequate to inform her of her right to counsel under *Miranda v. Arizona*, 384 U.S. 436

---

[3] The State introduced the *Miranda* form in question to the court at the hearing.

(1966). In particular, she argues the warning she received was insufficient because it conditioned her right to counsel upon a future event in violation of *California v. Prysock*, 453 U.S. 355, 361 (1981). The State responds that the warnings were sufficient and points to the U.S. Supreme Court's opinion in *Duckworth v. Eagan*, 492 U.S. 195 (1989) for support.

To give force to the United States Constitution's protection against compelled self-incrimination, the U.S. Supreme Court established in *Miranda* "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth* at 201; *Florida v. Powell*, 559 U.S. 50, 59 (2010); *see also California v. Prysock, supra.* Taken together, these three opinions "provide guidelines for evaluating the sufficiency of warnings given to a suspect. Most notable among them is the principle that the warnings cannot convey a limitation on the rights *Miranda* requires to be conveyed to the suspect." *State v. Wright*, 2015 WL 475847 (Del 2015).

The State bears the burden of proving by a preponderance of the evidence of establishing a knowing, intelligent, and voluntary waiver of *Miranda* rights. *State v. Lockhart*, 830 A.2d 433 (Me. 2003). The State also bears the burden of proving by a preponderance of the evidence that any interrogation was predicated on proper compliance with *Miranda*. *State v. Knights*, 482 A.2d 436, 440 (Me. 1984).

*Miranda* prescribed the following four now-familiar warnings:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 59-60 (2010) (quoting *Miranda*, 384 U.S. at 479. "After such warnings are provided, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *Miranda*, 384 U.S. at 479. As indicated, this inquiry has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotation and citations omitted). In sum, the *Miranda* waiver must be both voluntary and knowing.

A waiver will be found "[o]nly if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension...." *Id.* "The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation," which may include the defendant's "age, experience, education, background, and intelligence...." *Fare v. Michael C*, 442 U.S. 707, 725 (1979). "The prosecution does not need to show that a defendant's waiver of *Miranda* rights was express; an implicit waiver of the right to remain silent is sufficient to admit a defendant's statement into evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (citation omitted).

The right to the presence of an attorney addresses the concern that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent] by his interrogators." *Florida v. Powell*, 559 U.S. at 60 (quoting *Miranda*, 384 U.S. at 469). Accordingly, it is "an absolute prerequisite to interrogation, that an individual held for

9

questioning must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.* (quotation omitted).

The four warnings *Miranda* requires are invariable, but the U.S. Supreme Court has not dictated the words in which the essential information must be conveyed. *Id.* at 60. In determining whether police officers adequately conveyed the four warnings, the U. S. Supreme Court has held that reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Id.* at 60 (quotations omitted).

In *California v. Prysock*, an officer informed the suspect of his right to a lawyer's presence during questioning and his right to counsel appointed at no cost. 453 U.S. at 356-57. In particular, the officer stated, "[y]ou have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning. Do you understand this?" *Id.* at 356. A California court of appeals found the advice inadequate under *Miranda* because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. *Id.* at 358-59. The U.S. Supreme Court reversed, observing that "nothing in the warnings given [the defendant] suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before you are questioned,...while you are being questioned, and all during the questioning." *Id.* at 360-61.

*Prysock* contrasted the permissible situation in the case before it with an impermissible warning "in which the offer of an appointed attorney was associated with a

future time in court...." *Id.* at 361 (quotation omitted). As examples of impermissible warnings that linked "the reference to appointed counsel...to a future point in time after police interrogation," *Prysock* pointed to *United States v. Garcia*, 431 F.2d 134 (9th Cir. 1970) and *People v. Bolinski*, 260 Cal.App.2d 705 (1968). *Id.* at 360. The Court explained that in *Garcia*, the Ninth Circuit "found inadequate advice to the defendant that she could 'have an attorney appointed to represent you when you first appear before the U.S. Commissioner or the Court.'" *Id.* (quoting *Garcia*, 431 F.2d at 134). *Garcia* also based its holding on the fact that although the defendant was provided several different versions of the *Miranda* warning, not one warning fully complied with *Miranda* and when "[t]aken together the warnings were inconsistent." 431 F.2d at 134. *Garcia* concluded that the warnings failed to adequately inform the defendant of her rights, explaining that "the offer of counsel must be clarion and firm, not one of mere impression." *Id.* Similarly, *Prysock* explained that in *Bolinski*, "[t]wo separate sets of warnings were ruled inadequate" for linking the right to counsel a future event when the first advised the defendant that "*if he was charged*...he would be appointed counsel" and the second advised the defendant while he was in Illinois and about to be moved to California that "the court would appoint [an attorney] in *Riverside County*, [California]." 453 U.S. at 360 (quoting *Bolinski*, 260 Cal.App.2d at 718, 723) (emphasis added by *Prysock*).

In *Duckworth v. Eagan*, the U.S. Supreme Court upheld a *Miranda* warning that could be interpreted as linking the right to counsel to a future event. 492 U.S. at 198. In particular, *Duckworth* involved the following, pertinent warning:

> You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this

11

> right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer.

*Id.* A divided Seventh Circuit found the advice "that counsel would be appointed 'if and when you go to court'…was constitutionally defective because it denies an accused indigent a clear and unequivocal warning of the right to appointed counsel before any interrogation and link[s] an indigent's right to counsel before interrogation with a future event." *Id.* at 200. The Seventh Circuit believed this language "suggested that only those accused who can afford an attorney have the right to have one present before answering any questions and implie[d] that if the accused does not got to court, i.e. the government does not file charges, the accused is not entitled to counsel at all." *Id.* at 203 (internal quotations omitted).

The Supreme Court reversed the Seventh Circuit stating that the circuit "misapprehended the effect of the inclusion of "if and when you go to court" language. *Id.* at 203-04. It explained that the instruction accurately described the procedure for the appointment of counsel in Indiana and that it simply anticipated a question the suspect might be expected to ask after receiving *Miranda* warnings, i.e., "when [will he] obtain counsel." *Id.* at 204. The Court also noted that "*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Id.* Accordingly, reading the "if and when" language together with the other information conveyed—including the warnings that the suspect could talk to counsel before police asked him questions and could stop answering

12

questions at any time until he talked to a lawyer—the Court held that the warnings, "in their totality, satisfied *Miranda.*" *Id.* at 205.

Numerous courts following *Duckworth* have approved similar conditional language when otherwise coupled with competent *Miranda* warnings. *See e.g. Henson v. United States*, 563 A.2d 1096, 1097-98 (D.C.1989) (holding that *Miranda* was not violated where officer provided standard warning that "[y]ou have the right to talk to a lawyer for advice before we question you, and to have him with you during questioning," and also stated that "the police department does not provide attorneys for defendants, but [the suspect] would have an opportunity to call himself an attorney" because *Duckworth* was on point and the officer did not create the impression that the suspect must locate an attorney himself); *State v. Schwartz*, 467 N.W.2d 240, 244, 247 (Iowa 1991) (*Miranda* satisfied when suspect informed "[y]ou have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during the questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court" as it accurately reflected the procedure for the appointment of counsel in Iowa); *Commonwealth v. Colby*, 663 N.E.2d 808, 811 (Mass. 1996) (departure from standard *Miranda* warnings that stated "if [suspect] could not afford an attorney, the Commonwealth would attempt to provide one for him" was harmless error); *State v. Strain*, 779 P.2d 221, 223 (Utah 1989) (holding that detective's advisement that suspect had the right to have an attorney appointed for him by court "at a later date" was not defective under *Miranda* because even though "the warning did inform defendant about the immediate unavailability of court-appointed counsel for him,

13

we do not believe it carried any implication that he was required to submit to an interview with law enforcement officers without the presence of appointed counsel if he could not afford one"); *State v. Medrano*, 751 N.W.2d 102, 109-10 (Minn. 2008) (*Miranda* warning found sufficient where officer informed suspect he has "the right to talk to a lawyer now and have a lawyer present now or at any time during questioning," but also responded to question about having a lawyer present "now" by explaining the "chances are you won't be able to talk to a lawyer until tomorrow").

Here, the *Miranda* warnings Detective Jacques provided to Ms. Glidden are similar to those found sufficient by the U.S. Supreme Court in *Duckworth*. In particular, the defendants in both cases were each initially provided a clear warning that they have the right to the advice of an attorney before any questioning, and during questioning. Compare *Duckworth*, 492 U.S. at 198 ("You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning") with Detective Jacque's warning ("You have the absolute right to the advice of a lawyer before any questioning and to the presence of a lawyer here with you during questioning"). Similarly, both *Duckworth* and Detective Jacques made accurate, but potentially confusing statements about the unavailability of a lawyer at the present time. Compare *Duckworth*, 492 U.S. at 198 ("We have no way of giving you a lawyer but one will be appointed for you, if you wish, if and when you go to court") with Detective Jacques' warning ("I mean I can't produce you a lawyer, I mean we're not at that step in the process like we're in a courtroom that's not where we're at here, you came down to the police station and we're trying to get you know answer some questions about what happened and I'm willing to listen").

14

While the warnings in the present case are similar to those in *Duckworth*, they are not identical. In particular, *Duckworth* did not involve an equivalent to Detective Jacques' statement that "if you want to call a lawyer you can at some point." This statement links the right to counsel to a future event. Had Detective Jacques not qualified this statement, the undersigned might be more inclined to grant defendant's motion to suppress. However, following the statement, Detective Jacques provided the following qualifications: 1) he explained that if defendant could not afford an attorney one would be provided to her "*before* any questioning if [she] desire[d]" and 2) that defendant has "the right to stop answering any time or to stop answering at anytime until [she] can talk to a lawyer...." (emphasis added). These qualifications reiterated that defendant did not have to respond to any of the Detective's questions before consulting with counsel who would be appointed before any questioning.

Furthermore, additional circumstances indicate the defendant knowingly and voluntarily waived her right to counsel. In particular, the recordings show that Detective Jacques explained the *Miranda* warnings to defendant in a clear, deliberate voice and that defendant was paying attention while the warnings were read to her. The defendant also stated that she was sober during questioning and understood her rights. This understanding was evidenced by her qualified response that she would answer *some* of the questions posed by the Detective. Defendant acknowledged that she has been arrested before and has had attorneys appointed to represent her in the past. This fact indicates a familiarity with her rights under *Miranda* indicating she was not confused or misled by Detective Jacques' statement that she could "call a lawyer at some point." Finally, defendant signed the *Miranda* waiver form. Although a signed *Miranda* waiver form is

15

not conclusive on the issue, the presence of one is usually "strong proof" that a suspect waived their rights. *Hart v. Attorney Gen. of the State of Fla.,* 323 F.3d 884, 893 (11th Cir. 2003); *Missouri v. Seibert,* 542 U.S. 600, 608-609(2004)("Giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility").

Therefore, based on the totality of the circumstances, the court finds the *Miranda* warnings provided by Detective Jacques were sufficient and that Ms. Glidden voluntarily waived these rights.

Accordingly, the Court **denies** defendant's motion to suppress.

Date: 4/2/2015

BY _____

**Robert E. Mullen, Justice**
**Maine Superior Court**

16

   vs
TIFFANY D GLIDDEN
11 WINTER ST APT 3
WATERVILLE ME 04901

DOB: 09/30/1994
Attorney: DARRICK BANDA
         LAW OFFICES OF RONALD W BOURGET
         185 STATE ST
         AUGUSTA ME 04330-6407
         APPOINTED 11/20/2014

Filing Document: CRIMINAL COMPLAINT
Filing Date: 11/14/2014

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2014-01144

**DOCKET RECORD**

State's Attorney: MAEGHAN MALONEY

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1    **AGGRAVATED ATTEMPTED MURDER**            **11/04/2014 CHINA**
**Seq 8306  17-A  152-A(1)(A)           Class A**
   **FOWLIE            / MSP**

2    **CRIMINAL ATTEMPT**                       **11/04/2014 CHINA**
**Seq 8374  17-A  152(1)(A)             Class A**
   **FOWLIE            / MSP**

3    **CRIMINAL CONSPIRACY**                    **11/04/2014 CHINA**
**Seq 8369  17-A  151(1)(A)             Class A  Charged with INDICTMENT on Supplem**
   **FOWLIE            / MSP**

4    **ELEVATED AGGRAVATED ASSAULT**            **11/04/2014 CHINA**
**Seq 10077 17-A  208-B(1)(A)           Class A  Charged with INDICTMENT on Supplem**
   **FOWLIE            / MSP**

5    **AGGRAVATED ASSAULT**                     **11/04/2014 CHINA**
**Seq 629   17-A  208(1)(A)             Class B  Charged with INDICTMENT on Supplem**
   **FOWLIE            / MSP**

6    **CRIMINAL CONSPIRACY**                    **11/04/2014 CHINA**
**Seq 8370  17-A  151(1)(B)             Class B  Charged with INDICTMENT on Supplem**
   **FOWLIE            / MSP**

## Docket Events:

11/14/2014 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 11/14/2014

11/14/2014 Charge(s): 1,2
         HEARING -  INITIAL APPEARANCE SCHEDULED FOR 11/14/2014 at 01:00 p.m.

         NOTICE TO PARTIES/COUNSEL
11/19/2014 Charge(s): 1,2
         HEARING -  INITIAL APPEARANCE HELD ON 11/14/2014
         CHARLES  DOW , JUDGE
         Defendant Present in Court
11/19/2014 Charge(s): 1,2

PLEA - NO ANSWER ENTERED BY DEFENDANT ON 11/14/2014

11/19/2014 BAIL BOND - $50,000.00 CASH BAIL BOND SET BY COURT ON 11/14/2014
CHARLES DOW , JUDGE
NOT TO POSSESS ANY DANGEROUS WEAPONS INLCUDING BUT NOT LIMITED TO FIREARMS SUBMIT TO
SEARCH AT ANY TIME. HAVE NO DIRECT OR INDIRECT CONTACT WITH KATHRYN HOPKINS AND CARRISA
BUTKEWICZ. NOT TO ENTER ANY RESIDENCE, PLACE OF EMPLOYMENT, PLACE OF EDUCATION. COMPLY
WITH CURFEW OF 6PM-6AM. MAY BE REVIEWED BY ANY JUDGE OR JUSTICE.
11/19/2014 BAIL BOND - CASH BAIL BOND COND RELEASE ISSUED ON 11/14/2014

11/19/2014 Charge(s): 1,2
HEARING - STATUS CONFERENCE SCHEDULED FOR 01/13/2015 at 10:00 a.m.

11/19/2014 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 11/17/2014

11/21/2014 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 11/20/2014
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
11/21/2014 Party(s): TIFFANY D GLIDDEN
ATTORNEY - APPOINTED ORDERED ON 11/20/2014

Attorney: DARRICK BANDA
11/21/2014 Charge(s): 1,2
HEARING - STATUS CONFERENCE NOTICE SENT ON 11/21/2014

12/22/2014 Charge(s): 1,2,3,4,5,6
SUPPLEMENTAL FILING - INDICTMENT FILED ON 12/19/2014

12/22/2014 Charge(s): 1,2
HEARING - STATUS CONFERENCE NOT HELD ON 12/22/2014

12/22/2014 Charge(s): 1,2,3,4,5,6
HEARING - ARRAIGNMENT SCHEDULED FOR 01/13/2015 at 10:00 a.m.

12/22/2014 Charge(s): 1,2,3,4,5,6
HEARING - ARRAIGNMENT NOTICE SENT ON 12/22/2014

01/14/2015 Charge(s): 1,2,3,4,5,6
HEARING - ARRAIGNMENT HELD ON 01/13/2015
JOSEPH M JABAR , JUSTICE
Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. 45 DAYS TO FILE MOTIONS
01/14/2015 Charge(s): 1,2,3,4,5,6
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 01/13/2015

01/14/2015 HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 03/10/2015 at 08:30 a.m.

01/14/2015 BAIL BOND - CASH BAIL BOND CONTINUED AS POSTED ON 01/13/2015

DEFER ARG.
01/14/2015 HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 01/14/2015

02/28/2015 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 02/27/2015

03/11/2015 HEARING - DISPOSITIONAL CONFERENCE HELD ON 03/10/2015

03/11/2015 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 03/26/2015 at 01:00 p.m. in Room No. 1

      NOTICE TO PARTIES/COUNSEL
03/11/2015 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 03/10/2015

03/30/2015 HEARING - MOTION TO SUPPRESS HELD ON 03/26/2015
      ROBERT E MULLEN , JUSTICE
      Attorney: DARRICK BANDA
      DA: PAUL CAVANAUGH
      Defendant Present in Court
03/30/2015 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 03/26/2015
      ROBERT E MULLEN , JUSTICE
03/30/2015 Charge(s): 1,2,3,4,5,6
      TRIAL - DOCKET CALL SCHEDULED FOR 04/08/2015 at 09:00 a.m. in Room No. 1

04/03/2015 MOTION - MOTION TO SUPPRESS DENIED ON 04/02/2015
      ROBERT E MULLEN , JUSTICE
      COPY TO PARTIES/COUNSEL
04/03/2015 ORDER - COURT ORDER FILED ON 04/02/2015
      ROBERT E MULLEN , JUSTICE
      ORDER ON MOTION TO SUPPRESS

A TRUE COPY
ATTEST: _____
            Clerk